UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA LITVINOVA,<br><br>    Plaintiff,<br><br>    v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 18-cv-01494-RS<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION OF JUDGMENT AND ORDER** |

## I. INTRODUCTION

Plaintiffs seek reconsideration of the summary judgment granted to Defendant under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. After a full review of the record, it is apparent that the facts and legal arguments are adequately presented in the briefs, so pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for September 15, 2022 is vacated. For the reasons discussed below, Plaintiffs' motion for reconsideration is denied.

## II. LEGAL STANDARD

As "[a]n extraordinary remedy which should be used sparingly," Federal Rule of Civil Procedure 59(e) requires parties to move a court to amend judgments within twenty-eight days of their entry. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citations omitted). Generally, such motions may be granted under four basic grounds: "(1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such

1   motion is necessary to present newly discovered or previously unavailable evidence; (3) if such
2   motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an
3   intervening change in controlling law." *Id.* (citations omitted). Here, Plaintiffs seek
4   reconsideration on the first and third grounds: to correct manifest errors of law or fact and/or
5   manifest injustice. *Litvinova* Dkt. No. 108 at 4-5.

6   District courts "enjoy[] considerable discretion in granting or denying [Rule 59(e)]
7   motion[s]." *Allstate*, 634 F.3d at 1111. The law is clear that Rule 59(e) "'may not be used to
8   relitigate old matters, or to raise arguments or present evidence that could have been made prior to
9   the entry of judgment.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 (2008) (citing 11
10  C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed.1995)).
11  Indeed, "[j]udgment is not properly reopened absent highly unusual circumstances, unless the
12  district court is presented with newly discovered evidence, committed clear error, or if there is an
13  intervening change in the controlling law." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043,
14  1058 (9th Cir. 2020) (citations omitted).

15  Similarly, Federal Rule of Civil Procedure 60(b) identifies six bases for district courts to
16  provide relief from a final judgment or order. 60(b)(6), invoked by Plaintiffs, allows for relief for
17  "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). As a "catch-all provision" for the
18  court to justify relief, however, this rule "has been used sparingly as an equitable remedy to
19  prevent manifest injustice." *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998).
20  Accordingly, Plaintiffs must satisfy a high bar to prevail on their motion for reconsideration,
21  regardless of whether they rely on Fed. R. Civ. P. 59(e) or 60(b).

22  At the heart of the instant motion is the standard for summary judgment, which bears
23  repeating here. Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if
24  "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a
25  matter of law." Fed. R. Civ. P. 56(a). While the moving party has the initial burden of identifying
26  the portions of the record which demonstrate the absence of a genuine issue of material fact, the
27  nonmoving party must set forth "specific facts showing that there is a genuine issue for trial."

28

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Moreover, while "[t]he nonmoving party's evidence must be taken as true," "there must be some limit on the extent of the inferences that may be drawn in the nonmoving party's favor"—and "inferences from the nonmoving party's 'specific facts' as to other material facts . . . may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law." *T.W. Elec. Service, Inc. v. Pacific Elec. Contracts Ass'n*, 809 F.2d 626, 631-32 (1987). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" *Matsushita*, 475 U.S. at 587, and "a scintilla of evidence in support of the [non-moving party's position] will be insufficient" for the case to withstand summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

### III. DISCUSSION

Though Plaintiffs identify several purported errors of fact and law with the order granting summary judgment, their contentions merely repeat arguments already made—and addressed—in prior briefing. As a result, Plaintiffs fail to make the requisite showing for the "extraordinary remedy" of reconsideration, and their motion is denied.

**A. Factual & Evidentiary Findings**

Plaintiffs raise three separate areas that they claim represent triable issues of fact warranting reconsideration: (1) whether the nurses' pay is structured as a salary or hourly employment (*Litvinova* Dkt. No. 108 at 6-14); (2) whether the dual status system is a nefarious plot or a legitimate payroll system (*Litvinova* Dkt. No. 108 at 14); and (3) whether Defendant's deductions from Plaintiffs' pay were proper. *Litvinova* Dkt. No. 108 at 14-16.

Comprising the bulk of their motion, Plaintiffs contest the finding that the nurses are salaried. They assert that the "great disagreement between the parties' positions" and "plethora of evidence submitted to support Plaintiffs' case" should have led the Court to "throw[] up its hands and f[i]nd that a reasonable jury could find for Plaintiffs based on that virtual mountain of disputed evidence." *Litvinova* Dkt. No. 108 at 6-7. In support, they reiterate a litany of arguments

from previous briefs, including that the memorandum of understanding (MOU) references an hourly rate of pay; Defendant is authorized to deny Plaintiffs the right to work some or all of their shifts (referencing MOU Sections 298 and 299) and have done so (referencing the Declaration of Nato Green); Plaintiffs' pay is determined by, and fluctuates with, the number of hours worked (as evidenced by MOU provisions establishing overtime pay for nurses); and various other facts, including that the nurses are marked as nonexempt in the City's Compensation Manual and are required to clock in and out of work.

Plaintiffs' emphasis on the *amount* of argumentation it sets forth, coupled with their protestation that the evidence must be viewed in the light most favorable to them, wholly misses the mark. As the previous order explained, the City and the record provide an explanation for each of the specific facts on which Plaintiffs rely: the MOU's references to "hourly" pay "uniformly occur when referring to extra pay for certain shifts," while the MOU also contains a "salary" section describing a normal work schedule (without a corresponding "hourly pay plan" section); "nurses are marked as non-exempt because they have overtime through the MOU," and "[t]hey must clock in because the City cannot pay them for time they do not work." *Litvinova* Dkt. No. 103 at 7. Deposition testimony is devoid of any indication of specific facts indicating that nurses schedules are, or ever have been, cut. That the declaration of Nato Green contains a vague statement to the contrary[1]—a statement that is not only otherwise unsubstantiated, but actually contradicted, by the record—fails to assert a specific fact indicating the nurses do not receive a minimum salary. To the extent the Court's use of "weighed" in the previous order causes Plaintiffs consternation, the inartful form should not distract from the substance. To be clear: even construed in the light most favorable to Plaintiffs, the declaration presents, at *very* best, a "scintilla" of evidence that legally does not create a genuine dispute of fact. Plaintiffs cannot emphasize cherry-

---

[1] It reads, in relevant part: "CCSF does apply [Paragraphs 298 and 299] to 2320 and P103 nurses," and "there are ongoing grievances regarding CCSF's failure to pay show-up pay to nurses as required under Section 299 when their shifts are called off." *Silloway et al v. City and County of San Francisco*, Case No. 3:20-cv-07400, Dkt. No. 67-1 at 3.

picked facts and demand inferences that are plainly unreasonable "in view of other undisputed background or contextual facts." *T.W. Elec. Service,* 809 F.2d at 631.

Nor are the answering explanations merely factual. The law is quite clear that Plaintiffs' purportedly key facts cannot lead to the inferences they insist must follow.

Central to the FLSA analysis in this case are the strictures respecting public accountability that Defendant must follow, and which the law accounts for. *See, e.g.*, 29 C.F.R. § 541.710;[2] *Stewart v. City and County of San Francisco,* 834 F.Supp. 1233, 1240-41 (1993). That Plaintiffs "are listed as 'hourly' employees in the city's official payroll manual . . . and that their salaries are determined by the number of hours they work," and "[t]hey are subject to time deductions for any personal leave, and they receive compensatory time for extra hours worked," are all "factors which the . . . regulations *expressly cover*," and therefore legally insufficient for a finding that the nurses are not salaried. *Stewart,* 834 F.Supp. at 1240 (emphasis added); *see also Litvinova* Dkt. No. 103 at 11 (discussing public accountability and the fact that "Plaintiffs barely address this regulation in their briefing").

The mere existence of MOU Sections 298 and 299, without actual, specific evidence of improper deductions, do not themselves comprise deductions "as a practical matter" that run afoul of the salary basis regulation. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997). Plaintiffs have not shown, even when the facts are construed in the light most favorable to them, noncompliant deductions that demonstrate an intention by Defendant not to pay the nurses on a salary basis. *See* 29 C.F.R. 541.603(a)*; see also Litvinova* Dkt. No. 103 at 11-12 (noting that isolated and inadvertent improper deductions do not give rise to a FLSA violation).

---

[2] The regulation reads, in relevant part: "An employee of a public agency who otherwise meets the salary basis requirements of § 541.602 shall not be disqualified from exemption . . . on the basis that such employee is paid according to a pay system established by statute, ordinance or regulation, or by a policy or practice established pursuant to principles of public accountability, under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when accrued leave is not used by an employee . . ." 29 C.F.R. § 541.710

1    Addressing any remaining factual disputes that Plaintiffs identified would involve further
2    rehashing of analysis in the previous order. Simply put, this is a situation in which "the record
3    taken as a whole could not lead a rational trier of fact to find for the non-moving party."
4    *Matsushita*, 475 U.S. at 587.

### B. Legal Conclusions

Plaintiffs similarly raise three areas that they claim represent legal errors: (1) Defendant did not meet the burden of proof; (2) 29 C.F.R. §541.604(b) should have been applied to the case; and (3) the previous order erred in purportedly failing to address certain legal issues.

Plaintiffs' first contention is dispatched with the analysis above.

Second, Plaintiffs are mistaken in their continued quest to apply the inapposite 29 C.F.R. §541.604(b). As explained in the previous order, the text of the regulation itself clearly indicates that "the reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis." 29 C.F.R. §541.604(b); *see also Litvinova* Dkt. No. 103 at 8 & n.7 (providing additional analysis regarding the inapplicability of the provision). Plaintiffs' attacks almost entirely disregard the reasoning set forth in the prior order—including that, far from being irrelevant, the San Francisco pay ordinance provides a dispositive indication that nurses are salaried (and indicates the salary amount). Instead, Plaintiffs simply reassert prior arguments that "there can be no credible dispute that Plaintiffs' pay is computed on an hourly basis"—or, ironically, that because a factual dispute remains, the alternate finding (that Plaintiffs' pay is salaried) would be circular reasoning. *Litvinova* Dkt. No. 108 at 17. These are not only unavailing arguments, but also deeply inappropriate bases upon which to ask for reconsideration.

Finally, Plaintiffs' remaining "omissions" are equally unpersuasive. The previous order explained the factors that help ensure the nurses a minimum salary. *Litvinova* Dkt. No. 103 at 9-10. Contrary to Plaintiffs' assertions, such salary need not be contractually guaranteed. *See Coates v. Dassault Falcon Jet Corp.,* 961 F.3d 1039, 1045 n.6 & 1048 (8th Cir. 2020) (citing analysis in *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618, 627 (6th Cir. 2009) showing the salary basis test was amended to remove a reference to "employment agreement" and explaining

"[i]n the context of a regulation that eliminated the prior reference to 'employment contract,' the word [guarantee] is better read as a shorthand statement of the governing 'not subject to reduction' standard . . .").

The previous order also cited *Stewart* and *McGuire* for propositions which are clearly applicable to the current case—that this district has already found this City's pay system to be one of public accountability, and that a conversion of annual salaries into hourly increments in a payroll system does not mandate a conclusion that the worker is hourly, respectively—and which Plaintiffs' attempts at distinguishing simply do not address. *See Litvinova* Dkt. No. 99 at 6-7 (arguing that *Stewart* "considered whether 'managerial' employees as a whole, not Dual Status Registered Nurses, are exempt employees, among other factual differences" and *McGuire* found no evidence of disciplinary deductions and "did not involve a union contract that expressly authorized shifts to be canceled without pay").

## IV. CONCLUSION

Ultimately, Plaintiffs' mere disagreement with the Court's analysis of the facts and the case law is not a basis for reconsideration. Plaintiffs have not shown that the decision was erroneous or unjust on either on the facts or the law. For those reasons, and well as those discussed above, Plaintiffs' motion for reconsideration of judgement and order is denied.

**IT IS SO ORDERED**.

Dated: September 12, 2022

_____
RICHARD SEEBORG
Chief United States District Judge