ARTHUR A. HARTINGER (SBN 121521)
ahartinger@publiclawgroup.com
LINDA M. ROSS (SBN 133874)
lross@publiclawgroup.com
GEOFFREY SPELLBERG (SBN 121079)
gspellberg@publiclawgroup.com
SPENCER J. WILSON (SBN 266938)
swilson@publiclawgroup.com
PETER KRZYWICKI (MI SBN P75723)
pkrzywicki@publiclawgroup.com
RENNE PUBLIC LAW GROUP®
350 Sansome Street, Suite 300
San Francisco, CA  94104
Telephone: (415) 848-7200
Facsimile: (415) 848-7230

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA LITVINOVA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 3:18-CV-01494-RS<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:         November 20, 2025<br>Time:         1:30 p.m.<br>Courtroom:  3 – 17th Floor<br>Judge:        Hon. Richard Seeborg<br><br>Complaint Filed:   March 8, 2018<br>Trial Date:          March 30, 2026 |
| KRISTEN SILLOWAY, CHRISTA DURAN, BRIGITTA VAN EWIJK, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 3:20-CV-07400-RS<br><br>Complaint Filed:   October 23, 2020<br>Trial Date:          March 30, 2026 |

-1-

RENNE PUBLIC LAW GROUP®

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT ...............................................7

SUMMARY OF RELIEF REQUESTED .................................................................................7

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................9

I.     INTRODUCTION .........................................................................................................9

II.    LEGAL AND PROCEDURAL BACKGROUND............................................................11

      A.    The Ninth Circuit's Decision in *Silloway* ...........................................11

          1.    The Public Accountability Principle .......................................11

          2.    Partial Day Deductions For Absences Caused By The Employee .......................11

          3.    Questions on Remand ...........................................................12

III.   FACTUAL BACKGROUND ........................................................................................12

      A.    Staff Nurse Compensation .............................................................12

          1.    Staff Nurse Salaries................................................................13

          2.    Mandatory Overtime .............................................................14

          3.    Leave Banks And Permissible Salary Deductions .................................15

      A.    P103 Compensation .........................................................................15

      B.    The City's Payroll Practices............................................................16

IV.   STANDARD OF REVIEW ...........................................................................................16

V.    ARGUMENT ..............................................................................................................17

      A.    All Plaintiffs are Paid on a Salary Basis .......................................17

          1.    The City Assigns And Pay Staff Nurses According to A Consistent Schedule.........................................................................................17

          2.    The City's Pay Practices Conform To Section 710. ...............................17

      B.    The City Has Addressed The Questions Raised by the Ninth Circuit. ..............18

          1.    Plaintiffs Testified That The City Always Gave Them The Opportunity To Work Their Shifts. .............................................................................18

          2.    The City Has Addressed The Missing Pay Data.....................................19

      C.    Summary Judgment Must Be Entered Against The Silloway Plaintiffs.............................22

RENNE PUBLIC LAW GROUP®

1.    The Silloway Plaintiffs Cannot Meet their Burden to Establish Damages For Alleged Unpaid Overtime. ...................................................................22

2.    There Is No Basis for the Silloway Plaintiffs to Dispute The City's Evidence The Nurses Were Paid on a Salary Basis. ...............................26

3.    The Silloway Interrogatory Response is Inadmissible Because It Contradicts Plaintiff Testimony and Is Unverified ...............................27

4.    Even If This Court Considers the Flawed Evidence Above, Summary Judgment Against the Silloway Plaintiffs Who Were Deposed is Proper ...........30

D.    Summary Judgment Must Be Entered Against The Litvinova Plaintiffs. .........................31

1.    Litvinova's Refusal To Respond to Discovery Requests Resulted In Evidentiary Sanctions. ...........................................................31

2.    The Only Evidence Available To Litvinova Shows that the City Meets the Salary Basis Test. ...............................................................32

3.    The Litvinova Plaintiffs Cannot Present Any Contrary Evidence .........................32

4.    If the Court Grants the Daubert Motion Against the Litvinova Plaintiff's Expert, the Same Analysis Presented Above Applies ...........................33

E.    Defendant Is Entitled To Summary Judgment With Respect To The Claims Of Opt-Ins Who Are Not Proper Plaintiffs ...............................................33

F.    There Are No Triable Issues of Fact With Respect to the Deposed Plaintiffs. ...............34

G.    The City Acted In Good Faith .......................................................34

H.    The City's Actions Were Not Willful...............................................35

VI.    CONCLUSION...........................................................................36

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bratt v. Cnty. of Los Angeles*,
5
   912 F.2d 1066 (9th Cir. 1990) ................................................................................................34

6

*Cavanagh v. Ford Motor Co.*,
7
   2017 WL 2805057, 2017 WL 2805057 (E.D.N.Y. June 9, 2017)..........................................29

8

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................................................17

9

*City & Cnty. of San Francisco v. Tutor-Saliba Corp.*,
10
   218 F.R.D. 219 (N.D. Cal. 2003).....................................................................................24, 25

11

*Claus v. Canyon Cnty.*,
   No. 22-35292, 2023 WL 4118016 (9th Cir. June 22, 2023)............................................17, 30
12

*United States ex rel. Dahlstrom v. Sauk-Suiattle Indian Tribes*,
13
   No. C16-0052JLR, 2019 WL 4082944 (W.D. Wash. Aug. 29, 2019) ..................................29

14

*Daubert v. Merrell Dow Pharms., Inc.*,
15
   509 U.S. 579 (1993).........................................................................................10, 30, 33, 36

16

*Dayton Valley Invs., LLC v. Union Pac. R. Co.*,
   No. 2:08-CV-00127-ECR, 2010 WL 3829219 (D. Nev. Sept. 24, 2010)..............................26
17

*Eisenberg v. Ins. Co. Of N. Am.*,
18
   815 F.2d 1285 (9th Cir. 1987) .............................................................................................17

19

*EpicentRX, Inc. v. Bianco*,
20
   No. 21-CV-1950-MMA-DDL, 2024 WL 56995 (S.D. Cal. Jan. 4, 2024)..............................24

21

*Fed. Trade Comm'n v. Cardiff*,
   No. EDCV182104DMGPLAX, 2021 WL 3616071 (C.D. Cal. June 29, 2021).....................24
22

*Grouse River Outfitters, Ltd. v. Oracle Corp.*,
23
   848 F. App'x 238 (9th Cir. 2021)..........................................................................................24

24

*Grouse River Outfitters Ltd. v. Oracle Corp.*,
   No. 16-CV-02954-LB, 2019 WL 8752335 (N.D. Cal. Feb. 19, 2019)............................23, 24
25

*Key v. Qualcomm Inc.*,
26
   129 F.4th 1129 (9th Cir. 2025) .............................................................................................26

27

*Litvinova*
28
   Dkt. No. 130, Case Management Scheduling Order. Accordingly................................. *passim*

RENNE PUBLIC LAW GROUP®

*Litvinova*
  Dkt. No. 180, Order Grainting Sanctions ............................................................................33

*Magnetar Techs. Corp. v. Intamin, Ltd.*,
  801 F.3d 1150 (9th Cir. 2015) ....................................................................................22

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988)....................................................................................................35

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ....................................................................................35

*Payne v. Exxon Corp*,
  121 F.3d 503 (9th Cir. 1997)........................................................................................29

*Petrone v. Werner Enters., Inc.*,
  105 F.4th 1043 (8th Cir. 2024) ....................................................................................26

*Petrone v. Werner Enters., Inc.*,
  42 F.4th 962 (8th Cir. 2022) ................................................................22, 23, 24, 26

*Petrone v. Werner Enters., Inc.*,
  No. 8:11CV401, 2020 WL 3428982 (D. Neb. June 22, 2020), *vacated and remanded on other grounds*, 42 F.4th 962 (8th Cir. 2022)........................................................23

*Petrone v. Werner Enters., Inc.*,
  No. 8:11CV401, 2023 WL 144225 (D. Neb. Jan. 10, 2023) ....................................26

*Silloway*
  Dkt No. 121, Discovery Order. Judge Tse....................................................................28

*Silloway v. City and County of San Francisco*,
  117 F.4th 1070 (9th Cir. 2024) ............................................................................ *passim*

*Stewart v. City and County of San Francisco*,
  834 F.Supp. 1233 (N.D. Cal. 1993) ............................................................................18

*Tametria Nash-Perry v. City of Bakersfield*,
  No. 1:18-CV-01512 JLT, 2021 WL 3883681 (E.D. Cal. Aug. 31, 2021) ..............29

*Wilson v. Bradlees of New England, Inc.*,
  250 F.3d 10 (1st Cir. 2001)........................................................................................26

*Wilson v. Frito-Lay N. Am., Inc.*,
  260 F. Supp. 3d 1202 (N.D. Cal. 2017) ....................................................................29

*Yeti by Molly, ltd. v. Deckers Outdoor Corp.*,
  259 F.3d 1101 (9th Cir. 2001) ....................................................................................29

RENNE PUBLIC LAW GROUP®

**Statutes**

29 U.S.C.
    § 216(b)............................................................................................................34
    § 260..............................................................................................................34

**Other Authorities**

29 C.F.R.
    § 541.300(a)....................................................................................................17
    § 541.602(a)....................................................................................................11
    § 541.602(b)(4)...............................................................................................18
    § 541.603(a)....................................................................................................12
    § 541.603(b) and (c).......................................................................................12
    § 541.710....................................................................................................9, 12
    § 541.710(a)(1)...............................................................................................18
    § 541.710(a)(2), (3).........................................................................................18
    § 602(b)..........................................................................................................11
    § 790.15..........................................................................................................34

57 Fed. Reg. 37666, 37667 (Aug. 19, 1992)................................................... *passim*

Fed. R. Civ. P.
    26................................................................................................9, 23, 24
    26(a)..............................................................................................................26
    26(a)(1)(A)(iii)...............................................................................................24
    26(e)..............................................................................................................25
    33..................................................................................................................29
    37..............................................................................................................9, 26
    37(c)(1).....................................................................................................26, 29
    56(a)........................................................................................................16, 17
    1006..............................................................................................................23

RENNE PUBLIC LAW GROUP®

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

PLEASE TAKE NOTICE that on Thursday, November 20, 2025, at 1:30 p.m., or as soon thereafter as counsel may be heard, before the Honorable Richard Seeborg in Courtroom 3, 17th Floor of the Philip Burton Federal Building, United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant City and County of San Francisco ("City") will and hereby does move this Court for an Order granting the City's Motion For Summary Judgment Or In The Alternative Partial Summary Judgment in the cases of *Litvinova, et al v. City and County of San Francisco* and *Silloway et al v. City and County of San Francisco.*

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the Declarations of Christie Beetz, Hossein Borhani, Steven Boyles, Edward Guina, Luenna Kim, Peter Krzywicki, Steve Ponder, Jeffrey Schmidt, Geoffrey Spellberg, and Spencer Wilson, and the exhibits attached thereto, the argument of counsel, the pleadings and papers filed herein, and any other matters considered by the Court.

The City has also filed a companion motion for decertification.

**SUMMARY OF RELIEF REQUESTED**

The City seeks the following relief from this Court:  An order under Federal Rule of Civil Procedure 56 granting summary judgment or partial summary judgment in favor of the City and against the plaintiffs in the cases of *Litvinova, et al v. City and County of San Francisco* and *Silloway et al v. City and County of San Francisco* who bring clams under the Federal Labor Standards Act ("FLSA") that they are not salaried professionals and thus entitled to FLSA overtime.  This Court should grant summary judgment on Plaintiffs' claims because there is no disputed issue of material fact as to the following:

The Silloway Plaintiffs cannot meet their burden of proof to show an essential element of their case because they do not have admissible proof of FLSA damages for alleged unpaid overtime, nor have they made an adequate Rule 26 computation of damages.

The Silloway Plaintiffs are unable to rebut the City's showing that it complies with the FLSA salary basis test for public employees, because plaintiffs have testified that they were never deprived of

RENNE PUBLIC LAW GROUP®

1  work and have failed to produce admissible evidence to the contrary.

2  The Litvinova Plaintiffs are unable to rebut the City's showing that it complies with the FLSA

3  alary basis test for public employees, because they are limited to deposition testimony by plaintiffs that

4  admits they have no case.

5  Like the Silloway Plaintiffs, the Litvinova Plaintiffs cannot meet their burden of proof to show an

6  essential element of their case because their expert report on damages relates only to California wage-

7  and-hour claims not at issue in this case and because they never made an adequate Rule 26 computation

8  of damages.

9  The City has acted in good faith and its conduct was not willful, limiting any potential damages

10 against the City.

11  Dated:  October 16, 2025                    RENNE PUBLIC LAW GROUP®

12

13                                             By:  /s/ Spencer J. Wilson
                                                    Spencer J. Wilson
14
                                               Attorneys for Defendant
15                                             CITY AND COUNTY OF SAN FRANCISCO

16

17

18

19

20

21

22

23

24

25

26

27

28

RENNE PUBLIC LAW GROUP®

RENNE PUBLIC LAW GROUP®

1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs in these two collective actions are staff nurses for the City and County of San Francisco (the "City") who claim that they are entitled to overtime under the Fair Labor Standards Act ("FLSA") for voluntary per diem work they perform in addition to time they spend on their regular work schedules.[1]    These nurses assert that they do not qualify for the FLSA's professional services exemption because they are hourly, not salaried, employees.

In *Silloway v. City and County of San Francisco*, 117 F.4th 1070 (9th Cir. 2024), the Court of Appeals decided the key legal issues in this case in favor of the City.  It held that under an FLSA regulation applicable to public entities, 29 C.F.R. § 541.710 ("Section 710"), the staff nurses may be considered salaried professionals even if the City uses an hourly accounting system and makes certain partial day deductions from staff nurse salaries.  However, the Court remanded for a determination of whether the City, in practice, guarantees the plaintiffs the opportunity to work their FTE.

The City's evidence shows that the Plaintiffs are salaried employees.  The City satisfies the FLSA regulations that govern public employers by giving the nurses the opportunity to work their full shifts and only making deductions from pay consistent with Section 710.  All plaintiffs in both actions testified that the City never deprived them of the opportunity to work their one of their normal scheduled shifts as a staff nurse.  And the City has addressed the 72 pieces of payroll data that had concerned the Court of Appeals.

But the Silloway and Litvinova Plaintiffs cannot meet their burdens in this case.

First, the Silloway Plaintiffs cannot establish damages, an essential element of their case on which they have the burden of proof.  This is a complex case that requires an expert report on damages. The Silloway Plaintiffs have not provided one.  Their own Rule 26 disclosure on damages, although itself inadequate, shows the complexity of any damages calculation and the need for an expert report.  This failure alone requires the Court to grant summary judgment against Silloway.

---

[1]    The *Silloway* action includes approximately190 opt-in plaintiffs.  The *Litvinova* action, after the Court's order granting the City's Rule 37 motion, includes 7 opt-in plaintiffs.  *Litvinova* Dkt. No. 180, Order Granting Sanctions, at 11.

1    Second, the Silloway Plaintiffs cannot offer competent evidence to rebut the City's showing that

2    Plaintiffs are salaried.  The Silloway Plaintiffs testified at deposition that the City never deprived them of

3    the opportunity to work their regular shifts and the named plaintiffs so admitted in an interrogatory

4    response.  The City assumes that the Silloway Plaintiffs will offer a later, and contradictory, interrogatory

5    response, but it is unverified and thus inadmissible.  The Silloway expert report on liability, authored by

6    an unqualified attorney in counsel's own office, lacks reliability and relevance and must be excluded

7    under the standard set by *Daubert*.  *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

8    (1993).  The absence of a genuine dispute over liability is another independent reason to grant summary

9    judgment.  For all these reasons, summary judgement is proper.

10    The Litvinova Plaintiffs also lack evidence to rebut the City's showing on remand that the City

11    satisfies the salary basis test.  This Court's Order Granting Sanctions limits the evidence available to the

12    Litvinova Plaintiffs to only the deposition testimony of each nurse.[2]  In that testimony, the nurses are

13    clear – the City never deprived them of an opportunity to work their regular shifts.  Because the

14    deposition testimony supports the City's position and the Litvinova Plaintiffs cannot offer any other

15    evidence, summary judgment must be entered against them.  Additionally, the Litvinova Plaintiffs

16    offered a damages expert, but that expert report is of no help here because it applied California wage-

17    and-hour law, not the FLSA.  Accordingly, the Litvinova Plaintiffs will find themselves in the same

18    position as the Silloway Plaintiffs — unable to establish damages — and summary judgment against the

19    Litvinova Plaintiffs and in favor of the City is proper on those grounds as well.

20    This Court should grant summary judgment to the City, but if the Court does not, the Court

21    should grant the City's motion for decertification of collective action treatment.  Any evidence submitted

22    by Plaintiffs shows that their case, if allowed to move forward, would be based on individualized proof

23    unsuitable for a collective action.

24

25

26    _____

[2] On October 7, 2025, the Court granted the Litvinova Plaintiffs leave to file a motion for reconsideration
27    of the Order Granting Sanctions.  Briefing for, and disposition of, this motion will not be complete before
the deadline for dispositive motions.  For this reason, the City's Motion for Summary Judgment and
28    Memoranda of Points and Authorities in Support of the Motion assumes that the status quo will remain
undisturbed by the Litvinova Plaintiffs Motion for Reconsideration.

RENNE PUBLIC LAW GROUP®

## II.    LEGAL AND PROCEDURAL BACKGROUND

### A.    The Ninth Circuit's Decision in *Silloway*

To meet the FLSA salary basis test, 29 C.F.R. § 541.602(a) mandates that an "employee's predetermined amount of compensation shall not be 'subject to reduction because of variations in the . . . quantity of work performed.'" *Silloway*, 117 F.4th at 1079, (quoting section 602(a)).  The Court held, however, that Section 710 "qualifies" this mandate for public employers by permitting partial day deduction for absences not occasioned by the employer.  *Id.*

#### 1.    The Public Accountability Principle

Public employers like the City are subject to the rules set by Section 710, the "public accountability" principle which is based on "the idea that taxpayers' money should not be spent on public employees for time they are not working."  *Silloway*, 117 F.4th at 1076, (citing Exemptions from Minimum Wage and Overtime Compensation Requirements of the Fair Labor Standards Act, 57 Fed. Reg. 37666, 37667 (Aug. 19, 1992)).

As explained by the Court of Appeals, the "FLSA permits private employers to deduct salaried pay only in full-day increments, but public employers can make minute-by-minute pay deductions for unexcused absences."  *Silloway*, 117 F.4th at 1079.  Based on these rules, the Court of Appeals held that a public employer may "use an hourly accounting system without offending the salary basis test."  *Id.* at 1078 (citing *McGuire v. City of Portland*, 159 F.3d 460, 464 (9th Cir. 1998)).  It also held that a public employer may make partial day deductions from employee pay under Section 710 based on "an employee's own actions."  *Id.* at 1075-1076, 1079.

#### 2.    Partial Day Deductions For Absences Caused By The Employee

All employers may make full-day deductions to employee salaries consistent with 29 C.F.R. § 602(b) without running afoul of the FLSA salary basis test.  Section 710 of the regulations codifies the circumstances under which a public employer may make partial day deductions from an employee's pay under principles of public accountability and provides:

> An employee of a public agency who otherwise meets the salary basis requirements of § 541.602 shall not be disqualified from exemption under §§ 541.100, 541.200, 541.300 or 541.400 on the basis that such employee is paid according to a pay system under which the employee accrues personal leave and sick leave and which requires the public agency employee's pay to be reduced or such employee to be placed on leave without pay for absences for personal reasons or because of illness or injury of less than one work-day when

accrued leave is not used by an employee because:

> (1) Permission for its use has not been sought or has been sought and denied;

> (2) Accrued leave has been exhausted; or

> (3) The employee chooses to use leave without pay."

29 C.F.R. § 541.710.  For example, "if a public employee shows up five minutes late to work and exceeds the time in his accrued leave bank by less than a day, his employer may deduct the corresponding amount of pay." *Silloway*, 117 F.4th at 1076.

### 3.    Questions on Remand

The Court of Appeals held that "material factual questions remain in dispute regarding whether the City satisfied the [salary basis] test as a matter of practice." *Id.* at 1072.  The Court focused on 72 pieces of missing information out of over 2200 pay periods analyzed in the City's expert report, concluding: "We offer no definitive answer as to whether the 72 discrepancies showed actual improper deductions from staff nurses' predetermined amounts of compensation.  All we decide is that the answer depends on disputed factual questions." *Id.* at 1087.

The Court of Appeals articulated a multi-step process for analyzing whether the City may have any liability in this case.  First, application of section 29 C.F.R. § 541.710 to determine whether a deduction taken by the City is a permissible deduction under that section.  *Id.* at 1081-84.  Second, application of section 29 C.F.R. § 541.603(a) to determine whether there is an "actual practice" of impermissible deductions.  *Id.* at 1084-87.  Third, even if the City has an "actual practice" of making impermissible deductions, application of sections 29 C.F.R. § 541.603(b) and (c) to determine for whom, and during what time period, the professional services exemption is lost.  *Id.* at 1087-88.

## III.    FACTUAL BACKGROUND

Much of the relevant factual background is included in the Court of Appeals' opinion.  *Silloway*, 117 F.4th at 1072-1074.  The City includes the facts below in order to assure a full record before this Court on this motion.

### A.    Staff Nurse Compensation

The City runs a Department of Public Health ("DPH") which provides healthcare to San Franciscans through multiple facilities, including Zuckerberg San Francisco General Hospital, Laguna

Honda Hospital and Rehabilitation Center, the San Francisco Jails, and various clinics throughout the City.  Most of these facilities require staffing to operate 24 hours per day every day of the year. (Declaration of Steven Ponder ("Ponder Decl.") ¶¶ 3, 4.)  Plaintiffs in this case are mostly 2320 Staff nurses who work in these various facilities.[3] All Plaintiffs' salaries, benefits, and other terms of employment are a product of negotiation between the City and the nurses' union, SEIU Local 1021. (Ponder Decl. ¶ 7; Ex. A ("MOU").)

### 1.    Staff Nurse Salaries

All City Staff Nurses are paid a salary based on their classification that generally reflects length of employment. (Ponder Decl. ¶¶ 7, 11-12.)  The City publishes the salary range for full-time Staff Nurses in its biannual Salary Ordinance, which is approved in public meetings by the Board of Supervisors. (Ponder Decl. ¶¶ 7, 8, Ex. B.)  The salaries are also published in an online portal available to the public. (Ponder Decl. ¶ 10, Ex. D; *see also* City Classification & Compensation database, available at https://sfdhr.org/classification-compensation-database.) [4]

Part-time Staff Nurses are paid a prorated salary based on their full-time equivalency ("FTE"). (Ponder Decl. ¶ 14.)  Staff Nurses are assigned an FTE to reflect their regular work schedule.  (Ponder Decl. ¶ 14.)  For example, a full-time staff nurse is a 1.0 FTE and is regularly scheduled to work 80 hours every two weeks, a staff nurse assigned to a 0.9 FTE is regularly scheduled to work 72 hours every two weeks, and so on.  (Ponder Decl. ¶ 14.)  Part-time nurses are not assigned an FTE lower than 0.5. (Ponder Decl. ¶ 14.)  All Staff Nurses are scheduled to work hours consistent with their FTE each pay period and are guaranteed the opportunity to work those hours.  (Ponder Decl. ¶ 14.)

When negotiating and setting salaries, the City sets salaries on an annual basis.  (Ponder Decl. ¶ 13.)  However, in order to facilitate the administration of the City's payroll system, employee salaries are expressed on an annual, biweekly, and hourly basis.  (Ponder Decl. ¶ 13; Declaration of Christie

---

[3] The vast majority of Staff Nurses work in the 2320 Registered Nurse classification.  All proper Plaintiff Staff Nurses in these cases are or were 2320 Registered Nurses, with the exception of two *Litvinova* Plaintiffs:  Eva Goodfriend-Reano, a 2325 Nurse Midwife, and Debora Heureman, a 2328 Nurse Practitioner.

[4] Effective January 4, 2025, the full-time salary range for staff nurses is as follows: 2320 Registered Nurse ($164,840-220,636), 2323 Clinical Nurse Specialist ($204,282-$294,632), 2325 Nurse Midwife ($185,354-$294,632), 2328 Nurse Practitioner ($204,178-$299,554), 2830 Public Health Nurse ($164,840-220,636), 2330 Anesthetist ($268,918-$387,634). (Ponder Decl. ¶ 11(a).)

Beetz ("Beetz Decl.") ¶ 12.)  In order to calculate the biweekly salary, the annual salary rate is divided by 26, the number of biweekly pay periods in one year.  (Ponder Decl. ¶ 13.)  In order to calculate the hourly salary, the annual salary is divided by 2080, the number of full-time work hours in one year (40 hrs/week x 52 weeks/year = 2080).  (Ponder Decl. ¶ 13.)  This is true of all salaried positions at the City. (Ponder Decl. ¶ 13; Beetz Decl., Exh D.)

Absent extenuating circumstances, as defined in the MOU, nurses are not required to work on any of the ten defined holidays in the MOU.  (Ponder Decl. Ex. A, MOU §§ 385-408.)  Instead, they are paid Legal Holiday Pay.[5]  In the event a Staff Nurse works on a holiday the City also pays the Staff Nurse Holiday Overtime Pay for the holiday, which is equal to time-and-a-half the Staff Nurse's usual rate.  *See* (Ponder Decl. Ex. A, MOU §§ 388.)  Nurses have the option of depositing this pay in their Holiday Leave Bank.  *See* (Ponder Decl. Ex. A, MOU § 381.)  Nurses who work the night shift (third shift) during the March change to daylight savings time, and thus work an hour fewer than normal, and have the option to supplement that hour with leave time.  If they work in the fall, at the end of daylight savings time, they receive an additional hour of pay at overtime rates.  (Ponder Decl., 18.)

### 2.    Mandatory Overtime

In addition to their salary and special compensation, under the MOU, the City pays Staff Nurses whenever they are mandated by a supervisor to work additional hours beyond their regular scheduled work hours as a Staff Nurse.  (Ponder Decl. ¶ 23.)  This is MOU—not FLSA—overtime.  (*Id*.)  Under the MOU, a Staff Nurse is paid at time-and-a-half in all cases where mandatory overtime causes the Staff Nurse to work more than 40 hours in a week, and also in some situations where the Staff Nurse has

---

[5]    Full-time employees receive Legal Holiday Pay for the number of hours they are normally scheduled to work on the holiday. Part-time employees receive a pro-rated amount proportionate to their FTE. (Ponder Decl. ¶ 17.)

RENNE PUBLIC LAW GROUP®

worked fewer than 40 hours in a week.  (Ponder Decl. Ex. A.; MOU §§ 371-384.)[6]

### 3.    Leave Banks And Permissible Salary Deductions

The City provides Staff Nurses and other salaried employees leave benefits to cover time that employees do not work due to personal reasons.  As they work, nurses accumulate vacation, sick leave, holiday pay and other pay in leave banks, which they access when they wish to take time off from work. (Ponder Decl. ¶¶ 15, 16.)  All of these leave benefits are paid at the Staff Nurses' normal salary rate, which allows employees to remain in a fully paid status when taking time off of work.  Only when employees do not have sufficient time in their leave banks, or request uncompensated time off, will the City deduct amounts from an employee's salary.  (Ponder Decl. ¶ 16.) [7]

### A.    P103 Compensation

In addition to Staff Nurses, the City also employs P103 Special Nurses, commonly referred to as "Per Diem Nurses."  Unlike the Staff Nurses, Per Diem Nurses do not work a regular schedule but instead employed voluntarily on an as-needed basis only and paid on an hourly basis.  Per Diem Nurses typically will fill in for absent staff nurses or provide extra work on an as-needed temporary basis.  Due in part to the fact that Per Diem Nurses do not receive the same generous benefits as Staff Nurses and are not guaranteed a particular work schedule, Per Diem Nurses are paid at an hourly rate equal to 125% of the 2320 Registered Nurses' hourly salary.  (Ponder Decl. ¶ 11.)

---

[6]  Under the City's payroll system, certain employees are designated as "Z" employees, meaning that they are not eligible to receive overtime.  (Ponder Decl. ¶ 22; Beetz Decl. ¶10.)  Although "Z" employees are exempt from the FLSA, certain other employees, also exempt from the FLSA are not given the "Z" designation.  (Ponder Decl. ¶ 22; Beetz Decl. ¶10).  This is because they receive overtime based on their MOU.  (*Id*.)  Such employees include Staff Nurses and Optometrists.  (*Id*.)  Due to the limits of the City's payroll system, overtime payments cannot be made to an employee with a "Z" designation.  (*Id*.)  Therefore, in order to ensure that these employee receive MOU based overtime payments, these employees are not designated as "Z" employees, for whom the system will not pay overtime.  (*Id*.)  This is a payroll system safeguard that helps ensure that San Francisco employees only receive payments to which they are entitled.  (Beetz Decl. ¶10.)

[7] Like virtually all public employees, Staff Nurses who violate workplace rules may be suspended for one or more full days.  (Ponder Decl. ¶ 19.)  However, they are never suspended in partial day increments.  (*Id*.)  Moreover, under their MOU, Staff Nurses have multiple opportunities to appeal any proposed disciplinary suspensions.  (*Id*.)  Nurses who do not timely renew their certifications must do so before returning to work.  (*Id*.)  In rare instances where a Staff Nurse is tardy or otherwise absent for work without permission, the time away from work will be treated as an unexcused absence and may be coded as AWOL (Absent Without Leave).  (Ponder Decl. ¶ 20.)  In such instances, Staff Nurses will be unpaid for the portion of time they are absent from their shift.  (*Id*.)

RENNE PUBLIC LAW GROUP®

Staff Nurses also have the opportunity to work as Per Diem Nurses, if they wish.  Staff Nurses who also work Per Diem shifts are commonly referred to as "Internal Per Diem Nurses" or "Dual Status Nurses."  (Ponder Decl. ¶ 25.)  Internal Per Diem nurses work a regular salaried schedule in their Staff Nurse classification and also have the opportunity to voluntarily pick up additional shifts as a Per Diem Nurse.  Staff Nurses are never required to work these additional shifts, but do so voluntarily.  (Ponder Decl. ¶ 27.)[8]  When volunteering for a Per Diem Nurse shift, Staff Nurses are paid at the higher hourly rate associated with the Per Diem Nurse position.  (Ponder Decl. ¶ 24.)

### B.    The City's Payroll Practices

Full-time Staff Nurses are scheduled to work 80 hours every two weeks and part-time Staff Nurses are scheduled to work a pro-rated amount consistent with their FTE.  (Ponder Decl. ¶ 14)  Nurse Supervisors in each of DPH's various facilities prepare the work schedules.  (Beetz Decl. ¶¶ 5, 7.)  If a Staff Nurse chooses to work a P103 shift, that is recorded in a separate schedule and accounted for separately.  (Beetz Decl. ¶¶ 8, 11.)

At the end of each biweekly pay period, the nurses' supervisors review the nurses' schedules and make any adjustments to reflect hours nurses took off or any mandatory overtime worked by the nurses.  (Beetz Decl. ¶¶ 5, 7.)  This information is then sent to DPH's Payroll Division which inputs all of the time into a software system called People & Pay (also known as PeopleSoft) which creates an electronic "timesheet."  (Beetz Decl. ¶¶ 7, 8.)  Dual Status Nurses have two timesheets for each pay period:  one for their 2320 work and one for their P103 work.  (Beetz Decl. ¶ 11.)

## IV.    STANDARD OF REVIEW

The City seeks summary judgment or partial summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.  Summary judgment or partial summary judgment is properly granted when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to

[8] See also:  Spellberg Decl. Ex C, Deposition of Christa Duran ("Duran Depo") at 31:17-22; Ex. H, Deposition of Kritsten Silloway ("Silloway Depo") at 37:15-39:14; Ex. F, Deposition of Tatyana Litvinova ("Litvinova Depo") at 39:20-42:9; Ex. E, Deposition of Nicole Kenyon ("Kenyon Depo") at 25:13-26:11; Ex. A, Deposition of Romulo Adiao ("Adiao Depo") at 22:22-24:5; Ex. G, Deposition of Jacqueline Savage ("Savage Depo") at 20:18-21:11; Ex. I, Deposition of Nichole Solis ("Solis Depo") at 22:14-16; Ex. J, Deposition of Brigitta Van Ewijk ("Van Ewijk Depo") at 31:9- 33:1; Ex. D., Deposition of Ryan Hood ("Hood Depo") at 19:6-15.)

RENNE PUBLIC LAW GROUP®

1  the non-moving party, the movant is clearly entitled to prevail as a matter of law.  FRCP Rule 56(a);

2  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *see also Eisenberg v. Ins. Co. Of N. Am.*, 815

3  F.2d 1285, 1288-89 (9th Cir. 1987).  At summary judgment, however, the Court is not required to adopt

4  unreasonable inferences from circumstantial evidence.  *Claus v. Canyon Cnty.*, No. 22-35292, 2023 WL

5  4118016, at *1 (9th Cir. June 22, 2023) (citing *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988)).

6  **V.    ARGUMENT**

7    **A.    All Plaintiffs are Paid on a Salary Basis**

8        There is a two-prong test for determining whether an employee is exempt from the Act's overtime

9  requirements as a Learned Professional, consisting of a "duties test" and a "salary basis test."  29 C.F.R.

10  § 541.300(a).  As determined by the Court of Appeals, this case depends on "only one issue"—whether

11  the City has shown that staff nurses were paid on a "salary basis" during the relevant time.  *Silloway*, 117

12  F.4th at 1072.[9]

13        **1.    The City Assigns And Pay Staff Nurses According to A Consistent Schedule.**

14        All Staff Nurses are assigned to a consistent normal schedule according to their FTE or standard

15  hours.  The Nurses' MOU provides a "normal work schedule" of five eight-hour days, which applies to

16  all full-time Staff Nurses.  (Ponder Decl. Ex. A, MOU ¶¶ 293-324.)  Full-time staff nurses may work

17  alternative schedules, longer than 8 hours per day, but they must be scheduled to work a total of 80 hours

18  in a two-week period.  *See* (Ponder Decl. Ex. A, MOU ¶ 295; Ponder Decl. ¶ 14.)  The MOU permits

19  part-time work schedules of less than 40 hours per week.  (MOU ¶ 321.)  These part-time staff nurses

20  work a consistent number of hours every two weeks based on their FTE and receive a prorated salary for

21  this work.  (*See* MOU ¶ 326 ("Salaries for part time services shall be calculated upon the compensation

22  for normal work schedules proportionate to the hours actually worked"); Ponder Decl.¶ 14.)[10]

23        **2.    The City's Pay Practices Conform To Section 710.**

24        The City's payroll practices are consistent with the salary basis test and Section 710.  The

25  ─────────────────────
26  [9] Plaintiffs in both *Litvinova* and *Silloway* did not dispute that the nurses satisfied the "duties" test.
    *Silloway*, 117 F.4th at 1074.

27  [10] Plaintiffs previously focused on MOU language providing for minimum payments if a nurse is sent
    home or denied work due to staffing needs.  (Ponder Decl. Ex. A, MOU §§ 311, 312.)  But the Court of
28  Appeal rejected the contention that this provision was determinative.  *Silloway* at 1087 ("This factor does
    not weigh in favor of either side").

Addendum to the expert report fills in the missing 72 pieces of information, showing that nurses either worked, took authorized leave time, or took unpaid time off at their own option.  Section 710 specifically permits public employers to deduct from salary in situations where an employee's "accrued leave has been exhausted" or "the employee chooses to use leave without pay."  29 C.F.R. § 541.710(a)(2), (3).  Deductions for tardiness (or other unexcused absences) are also permitted because those instances constitute situations where "permission for [leave] has not been sought or has been sought and denied."  29 C.F.R. § 541.710(a)(1); see also *Stewart v. City and County of San Francisco*, 834 F.Supp. 1233, 1241 (N.D. Cal. 1993) (granting summary judgment in favor of City and rejecting claims that the City's practice of tracking hours and penalizing employees for certain absences violated the FLSA). [11]

### B.    The City Has Addressed The Questions Raised by the Ninth Circuit.

In the 9th Circuit's decision in *Silloway*, the Court of Appeal focused on the 72 pieces of data from the City's expert report as creating a material issue of disputed fact.  *Silloway*, 117 F.4th at 1082, 1087.  On remand, the City conducted additional discovery to address this issue.

### 1.    Plaintiffs Testified That The City Always Gave Them The Opportunity To Work Their Shifts.

On remand, the City completed the depositions of most of the staff nurses who had the 72 alleged shortfalls.  (*See* Declaration of Geoffrey Spellberg ("Spellberg Decl.") Exs. A-Q.)[12]  The staff nurses testified that during the period covered by this lawsuit, they could not recall any instance in which the City had prevented them from working their normally scheduled shift or sent them home early from a shift against their will:

Silloway plaintiffs:  Capacillo Depo at 42:19-44:13; Chen Depo at 32:11-18, 37:3-5, 39:19-41:17, 42:6-43:22; Duran Depo at 17:6-19:23; Gray Depo at 14:8-15:19; Kenyon Depo at 20:22-22:9; Padilla-Brainin Depo at 37:4-38:10; Ruiz Depo at 13:13-15:2, 18:13-20:1; Silloway Depo. at 22:10-23:6; Solis Depo at 13:1-8; Van Ewijk Depo at 18:1-22.  (Spellberg Decl., Exs. C, D, E, F, I, K, L, O, P, Q)

---

[11]  Moreover, Staff Nurse work attendance is necessary to ensure the safety of patients and other medical staff.  (Ponder Decl. ¶ 19; Ponder Decl. Ex. A, MOU ¶ 619-720.)  Deductions to salaries for unexcused absences are therefore also permissible as "penalties imposed in good faith for infractions of safety rules." *See* 29 C.F.R. § 541.602(b)(4).

[12]  Silloway did not produce for deposition two of the Silloway plaintiffs who had been included in the original City expert report -- Tonia S. Vega and Mpheza J. Mapara.  Wilson Decl. ¶ 9.

Litvinova plaintiffs. Adiao Depo 15:8-16:21; Bondoc Depo at 20:16-21:6, 22:16-23:16; Gusman Depo at 51:1-52:2; Hayo Depo at 20:15-22:2; Hood Depo at 22:6-28:22; Litvinova Depo at 26:18-29:8; Savage Depo at 21:23-24:24. (Spellberg Decl., Exs. A, B, G, M, H, J, N.) In a few instances, plaintiffs testified that they had been offered the opportunity to go home during a low patient census, but that it was not required, and they did so voluntarily.[13]

This information from plaintiffs confirms that the City has a system that complies with the salary basis test. A public employer "must give its employees the opportunity to earn predetermined amounts on a weekly or less frequent basis." *Silloway*, 117 F.4th at 1079. That is what happened here.

## 2. The City Has Addressed The Missing Pay Data.

On remand, the City updated its initial expert report to incorporate the missing data. (Declaration of Hossein Borhani ("Borhani Decl."), Ex. A, City's Expert Disclosure Dated July 31, 2025, Ex. A, Borhani Expert Report, dated July 31, 2025 ("Borhani Expert Report")). As with the prior report, the expert reviewed the payroll records of twenty-six plaintiffs, including all named plaintiffs, some early declarants and a randomly selected group of opt-in plaintiffs. (Borhani Expert Report, p. 2.) The expert applied City pay codes and other codes that described City pay practices to update his report and provide an accounting of how nurses are scheduled and paid in each pay period. (Borhani Expert Report , p. 4.) The report concludes that, "[r]egardless of FTE, my review of the available data indicates that staff nurses work based on fixed schedules and are consistently paid for all hours of their regular work schedules," with limited exceptions for when nurses ran out of accrued leave hours, took unpaid leave for personal reasons and in one case arrived late for a shift. (Borhani Expert Report, p. 1.)

The Addendum to the expert report specifically addresses the previously missing data. This was a labor-intensive endeavor that required SFDPH's Payroll Department to obtain records associated with the alleged shortfalls and where necessary to track down the staff nurses' specific unit supervisors for particular time periods. (Borhani Decl, Ex. 1, Borhani Expert Report, dated July 31, 2025, Ex. B (Addendum to Report ("Addendum")), and Ex. D (Elaine Lee Declaration ("Lee Decl.")).)

---

[13] The only exception was Kristina Gusman who stated that she twice lost an hour during the spring transition to day light savings time, but may have worked an extra hour in the fall.[13] (Spellberg Decl. Ex G, Gusman Depo 46:16-48:3, 52:4-54:10). Moreover, as demonstrated below, nurses have the option to supplement any unworked time with leave bank hours. (Ponder Decl. ¶18)

RENNE PUBLIC LAW GROUP®

The City's expert found a series of disparate reasons why the 72 instances of pay information were initially missing. The following describes the new information that accounted for the previously missing time.

Retroactive off-cycle payments: The City provided its expert with a more complete version of the nurse payroll records that included "off cycle payments" which are "retroactive wage payments that occur outside the regular two-week pay cycle." (Borhani Decl, Ex. 1, Addendum p. 1.) The off cycle payments had not been included in the previous payroll data provided to the City's expert. For example, for the pay periods ending July 26, 2018, and July 12, 2019, Nichole Solis received off-cycle retroactive payments, respectively, for 56 and 12 work hours. (Id. pp. 1, 10)

Updated payroll data: The City supplied the City's expert with updated payroll records that had been missing from the original version of the payroll records for some of the nurses. (Id. p. 1.) For example, in the pay periods ending January 11, 2019, May 17, 2019, and September 20, 2019, Nicole Kenyon was credited with additional hours of worked time, holiday pay, and floating holiday pay. (Id., pp. 2, 10.)

Compensatory time deposited into leave banks: In their updated report, the experts also included hours that a nurse worked but decided to deposit into a leave bank for future use. (Id. p. 2.) For example, in the pay period ending 6/3/18, Santiago Hayo worked and earned compensatory time for an additional 12 hours. (Id. p. 5.) This arrangement is fully compliant with the FLSA. See DOL Opinion Letter 2007-09 (public employers may allow both hourly and salary employees to receive compensatory time benefits in lieu of cash payments for non-overtime hours worked, provided that doing so does not reduce employee's regular rate of pay below minimum wage).

Legal holiday pay – not supplemented: In some instances, nurses did not work on a holiday, received "legal holiday pay" that was a percentage of their pay, but did not supplement that pay with hours from a leave bank. (Id. p. 2.) Under City policy, nurses have the opportunity to make up for hours not worked on a holiday by using hours in their leave banks. (Ponder Decl. ¶ 17) The expert report noted the instances in which nurses did not supplement their holiday pay with leave bank hours.

Overtime resulting in nurse time off: Under the nurse MOU, if a nurse works overtime during a pay period there is an option to forego subsequent regular shifts. (Ponder Decl. Ex. 1, MOU §§ 381-84.)

RENNE PUBLIC LAW GROUP®

RENNE PUBLIC LAW GROUP®

The experts noted time periods in which a nurse worked overtime and thus appeared to forego working a regular shift. (Borhani Decl, Ex. 1, Addendum p. 3-.)  For example, see the pay periods ending October 4, 2019, and March 6, 2020, for James Gilliam. (*Id.* p. 6.)

Balanced time – Offset pay periods:  In some cases, the experts noted patterns in which nurses were working more in a prior or subsequent pay periods to offset a shortage of hours in a pay period. (Borhani Decl, Ex. 1, Addendum, p. 3-4.)  For example, see pay periods ending February 8, 2019, July 26, 2019, and May 1, 2020, for Melissa Chen.  (*Id.*, p. 4.)

Daylight Savings Time – not supplemented:  Nurses who work the night shift during the transition in March to daylight savings time leave work an hour early, but have the option to supplement that hour with pay from their leave banks.  (*Id.* p. 3; Ponder Decl. ¶18.)  For example, for the pay periods ending March 22, 2019, and March 20, 2020, Kristina Gusman worked the night shift during the March transition to daylight savings time, thus leaving an hour early, and did not supplement her pay from a leave bank.  (*Id.*, p. 10.)  Moreover, nurses who work the night shift in the fall, at the end of daylight savings time, earn an additional hour, at overtime rates.  (Borhani Decl., Ex. 1, Addendum p.3; Ponder Decl., ¶ 18.)

Supervisor explanation– nurse took unpaid leave:  In order to determine why certain time was not accounted for in the payroll records, the experts obtained an explanation from the nurse supervisors. (Borhani Decl, Ex. 1, Addendum, p. 4; and Ex. D, Lee Decl., ¶¶4-13.)  The nurse supervisors reported that the nurses had run out of leave time, decided to take unpaid leave or were on a modified schedule. For example, for the pay period ending April 17, 2020, James Gilliam's supervisor reported that he took 48 hours of vacation time but had only 33.83 hours in his leave bank.  (Borhani Decl, Ex. 1, Addendum, p. 6.)  For the pay period ending May 17, 2019, Jocselyn Madamba's supervisor reported that Madamba took off a 12-hour shift, used 8 hours of education leave and did not use other leave banks to cover the rest of her unworked shift.  (*Id.*, p. 7.)

Deposition testimony:  The City's expert also examined the deposition testimony of the plaintiffs whose schedules were examined in the expert report.  As shown above, all testified that they were not deprived of the ability to work a regular shift.

The *Silloway* Plaintiffs will no doubt contend, based on their expert rebuttal report, that the

sample investigated by the Borhani expert report was too small to be probative of the entire plaintiff group. But the *Silloway* expert rebuttal report itself is flawed, as it was based on only the 12 Silloway plaintiffs and not the larger group analyzed by Borhani. But in any event, Plaintiffs' argument is irrelevant. The Court of Appeals specifically directed the City to address the missing information on remand, which the City has done

**C.    Summary Judgment Must Be Entered Against The Silloway Plaintiffs.**

      **1.    The Silloway Plaintiffs Cannot Meet their Burden to Establish Damages For Alleged Unpaid Overtime.**

            **a.    The Silloway Plaintiffs Need Expert Testimony so the Jury is Not Left to Speculate on Damages but they Do Not Have a Damages Expert**

Under the FLSA, the plaintiff has the burden of proving damages. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946). The Silloway Plaintiffs cannot meet their burden because they do not have an expert report that calculates their claimed damages for unpaid overtime.

"To survive a motion for summary judgment," a plaintiff must "provide evidence such that the jury is not left to 'speculation or guesswork' in determining the amount of damages to award." *Magnetar Techs. Corp. v. Intamin, Ltd.,* 801 F.3d 1150, 1159 (9th Cir. 2015), (quoting *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir.1988)). In a complex FLSA case such as this, that evidence needs to be in the form of expert testimony. *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 969 (8th Cir. 2022).

The Silloway Plaintiffs do not have a damages expert. The Silloway Plaintiffs' only expert, Ms. Andrea Don, focuses solely on liability. *See generally,* (Declaration of Peter Krzywicki ("Krzywicki Decl.") Ex. A.) Ms. Don admitted at her deposition that her expert report does not provide a damages model, calculate damages owed, or propose a methodology for calculating damages. (Krzywicki Decl. Ex. E., Deposition of Andrea Don ("Don Depo") at 23:11-25.)

Accurately calculating damages requires expert testimony in this case. When presented with a similar situation, the Eighth Circuit found plaintiffs unable to meet their burden regarding damages without expert testimony. *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 969 (8th Cir. 2022). In *Petrone*, a group of 55,000 truck drivers brought an action against their employer under the FLSA. After

RENNE PUBLIC LAW GROUP®

1   plaintiffs' supplemental expert report was rejected as tardy, judgment was entered against plaintiffs and

2   in favor of defendant.  The district court held "[t]here is clearly more analysis to be done of the evidence

3   in this case than simple arithmetic. The evidence was such that even Plaintiffs' expert made significant

4   errors which rendered his first report likely inadmissible.  *A jury could not accurately determine damages*

5   regarding the pay and time records for 55,000 class members without expert testimony in this case."

6   *Petrone v. Werner Enters., Inc.*, No. 8:11CV401, 2020 WL 3428982, at *3 (D. Neb. June 22, 2020),

7   *vacated and remanded on other grounds*, 42 F.4th 962 (8th Cir. 2022) (emphasis added).

8        The Eighth Circuit agreed with the lower court on this issue, finding that the "evidence of

9   damages was so voluminous and complicated that Plaintiffs' own expert had difficulty correctly

10  calculating damages, demonstrating that this evidence is not of the type to which the jury could simply

11  apply basic math principles in order to calculate damages without the assistance of expert testimony."

12  Petrone, 42 F.4th 962 at 969.  It also concluded that in "the absence of expert testimony, summary

13  evidence of wages and hours would not 'assist the jury in understanding the testimony already

14  introduced,' and thus, Rule 1006 would not be appropriate in this instance."  *Id.* (internal citations

15  omitted).  In other words, volume alone was not the problem, because summarizing time and pay data,

16  without an expert to make needed computations, does not provide basis for the jury to determine

17  damages.  Based on the absence of an adequate expert report on damages, the *Petrone* plaintiffs' case

18  was dismissed.  The instant case is analogous.

19       Just like in *Petrone*, calculating damages from the pay and time data the City produced is

20  complicated, requiring expert testimony to explain the calculations.  Indeed, because accounting is not a

21  matter of common knowledge, courts routinely allow accounting experts to offer testimony regarding

22  damages.  *Grouse River Outfitters Ltd. v. Oracle Corp.*, No. 16-CV-02954-LB, 2019 WL 8752335, at *3

23  (N.D. Cal. Feb. 19, 2019).  The Silloway Plaintiffs' Rule 26 disclosures, although inadequate for reasons

24  explained below, is effectively an admission of the complexity of any damages calculation for unpaid

25  overtime.  First, Plaintiffs calculated a "Regular Rate" by "averaging pay for all hours worked that week,

26  including hourly differentials but excluding any overtime and holiday premiums."  (Krzywicki Decl.,

27  Exh B. at 4.)  Second, they "calculated overtime pay by multiplying hours worked above 40 that week by

28  0.5 the regular rate of pay."  *Id.*  Third, they "calculated 'minimum payment owed' per week by adding

the nurses' regular pay and overtime pay." *Id.*  Fourth, to calculate the minimum payment owed per pay period, they "added the results for the two weeks within each pay period." *Id.*  Fifth, they "calculated earnings (wages paid) per pay period by adding the pay for hours worked, including applicable offsets for overtime and holiday pay." *Id.*  Sixth, they "calculated wages owed per pay period by subtracting the earnings from the minimum payment owed, for every pay period where the minimum payment owed was greater than the earnings." *Id.* at 5.  The complicated formula advanced by Silloway Plaintiffs' counsel to estimate damages shows that expert testimony is needed, just like in *Petrone*.

The Silloway Plaintiffs cannot establish damages, on which they have the burden of proof, because they do not have expert testimony that would allow a jury to fairly estimate damages.  Thus, summary judgment against them is proper.

> **b.      The Silloway Plaintiffs Did Not Meet Their Obligations Under Rule 26 To Produce Adequate Damages Computations**

> **i.      Rule 26 Requires A Computation Of Each Category of Damages**

The Silloway Plaintiffs cannot establish damages at trial for the additional and related reason that they have not adequately disclosed their damages calculations.  Rule 26 requires parties to provide to the other parties "a *computation* of *each category* of damages claimed . . . ."  Fed. R. Civ. P. 26 (emphasis added).  "A party claiming damages or other monetary relief must, in addition to *disclosing the calculation of such damages*, make available the supporting documents . . . ."  Fed. R. Civ. P. 26 advisory committee's note (1993) (emphasis added).  Rule 26(a)(1)(A)(iii) contemplates producing both damages computation *analysis* and *explanation*.  *Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x 238, 244 (9th Cir. 2021).  For instance, "in a claim for lost wages, there should be some information relating to hours worked and pay rate."  *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003).  This analysis requires more than setting forth a lump sum for a claimed element of damages.  *EpicentRX, Inc. v. Bianco*, No. 21-CV-1950-MMA-DDL, 2024 WL 56995, at *11 (S.D. Cal. Jan. 4, 2024) (collecting cases).  Where a party fails to disclose its computation of each category of damages, it lacks evidence to establish damages at trial, warranting a dismissal of claims.  *See Fed. Trade Comm'n v. Cardiff*, No. EDCV182104DMGPLAX, 2021 WL 3616071, at *6

Renne Public Law Group®

1  (C.D. Cal. June 29, 2021) (explaining that because "none of the FTC's prior disclosures described its

2  computation of damages for ROSCA violations, however, it appears that the FTC has no evidence to

3  present at trial to support its nascent theory of damages").

4       The Silloway Plaintiffs initial disclosure did not compute damages at all and their supplemental

5  disclosures are inadequate for the reasons set forth below.

6            **ii.**    **The Silloway Plaintiffs Never Produced Adequate Damages
Computations**

7

8       Once fact and expert discovery is complete, plaintiffs are required to provide a detailed disclosure

9  regarding their damages calculations. *Tutor-Saliba Corp.*, 218 F.R.D. at 222.  The *Silloway* Plaintiffs

10  have not done so.  The *Silloway* supplemental disclosures, dated February 14, 2025, estimated damages

11  only for the period ending October 1, 2021, and stated that they were waiting for additional payroll

12  information through 2024.  (Krzywicki Decl. Ex. B at 4.)  It relied on information produced by the City

13  on or before January 13, 2025.  *Id.*  The City produced an additional 2,045,335 lines of payroll

14  information between January 13, 2025, and April 11, 2025.  (Krzywicki Decl. Ex. C (summarizing the

15  payroll data produced to plaintiffs).)  Despite the additional data, the *Silloway* Plaintiffs have not

16  provided the City with an updated supplemental disclosure on damages despite the requirement to do so.

17  *See* Fed. R. Civ. P. 26(e).  Nor are the Silloway Plaintiffs waiting for expert discovery to produce the

18  damages calculation.  As discussed above, the Silloway Plaintiffs have not disclosed a damages expert.

19  Their only expert admitted at her deposition that her expert report does not provide a damages model.

20  (Krzywicki Decl. Ex. E., Don Depo. at 23:11-25.)  Plaintiffs are out of time:  fact discovery closed on

21  June 30, 2025, and expert discovery closed on September 15.  *Silloway* Dkt. No. 122, Scheduling Order.

22  The Silloway Plaintiffs have had all the information needed to disclose their damages computations since

23  last February and they have not done so.  Because none of the Silloway Plaintiffs' prior disclosures

24  adequately describe its computation of damages, they cannot establish damages and summary judgment

25

26

27

28

1    for the City is proper.

2        Accordingly, summary judgment should be entered against them. [14]

3            **2.    There Is No Basis for the Silloway Plaintiffs to Dispute The City's Evidence
            The Nurses Were Paid on a Salary Basis.**

4

5                **a.    All Deposed Silloway Plaintiffs Testified That The City Always Gave
                Them The Opportunity To Work Their Shifts.**

6

7        On remand, the City completed the depositions of most of the staff nurses who had the 72

8    alleged shortfalls.[15]  The staff nurses testified that during the period covered by this lawsuit, they

9    could not recall any instance in which the City had prevented them from working their normally

10   scheduled shift or sent them home early from a shift against their will.  *See supra,* Section V.B.1.

11   (citing Silloway Deposition Transcripts).

12       Indeed, Ms. Silloway herself testified:

13       Q. So for your 2320 shifts, were you ever directed not to report to a scheduled shift?

14       A. Never.

15       Q. Okay. Have you ever reported to a 2320 work shift but then been sent home due to
         lack of work or another situation?

16

17

18   [14] As described above, *Silloway* Plaintiffs failed to produce the requisite evidence on damages.
     Presently, Federal Rule of Civil Procedure 37 is not implicated because the Silloway Plaintiffs have not
19   yet tried to belatedly introduce evidence to establish damages. But should they attempt to do so, their
     attempt must be rejected.  If a party fails to make disclosures required by Rule 26(a) or (e), the party
20   cannot use that nondisclosed information or witness "at a trial, unless the failure was substantially
     justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  This sanction is self-executing and automatic.  *Key v.*
21   *Qualcomm Inc*., 129 F.4th 1129, 1143 (9th Cir. 2025).  It is the obligation of the party facing sanctions to
     show that its failure was either justified or harmless.  *Wilson v. Bradlees of New England, Inc.*, 250 F.3d
22   10, 21 (1st Cir. 2001); *accord Qualcomm Inc*., 129 F.4th at 1143.  There is no basis for the Silloway
     Plaintiffs to carry this burden.  In the *Petrone* case discussed above, the district court found that the
23   *Petrone* plaintiffs did not carry their burden of showing their failure to timely disclose an expert was
     justified or harmless because they had the relevant information for five months before the close of expert
24   discovery and allowing untimely disclosure would have delayed the trial prejudicing the defendant.
     *Petrone v. Werner Enters., Inc.*, No. 8:11CV401, 2023 WL 144225, at *10-12 (D. Neb. Jan. 10, 2023).
25   The Eight Circuit affirmed.  *Petrone v. Werner Enters., Inc.*, 105 F.4th 1043, 1057-58 (8th Cir. 2024).
     Courts in the Ninth Circuit have similarly found failing to disclose experts and damages calculations was
26   not harmless.  *E.g.*, *Dayton Valley Invs., LLC v. Union Pac. R. Co.*, No. 2:08-CV-00127-ECR, 2010 WL
     3829219, at *6 (D. Nev. Sept. 24, 2010) (collecting cases).  Any attempt to belatedly introduce evidence
27   in this case should be decided in the same way.

     [15]  *Silloway* did not produce for deposition two of the *Silloway* plaintiffs who had been included in the
28   original City expert report–Tonia S. Vega and Mpheza J. Mapara.  Wilson Decl. at ¶ 9.

A. Never. We were too busy for that.

Q. Are you aware of any other staff nurses who were sent home or denied the opportunity to work for any of those reasons?

A. Absolutely not. We were always incredibly short-staffed and incredibly busy. We needed as much staff as possible.

Q. Were you ever sent -- did you ever report to a 2320 shift only to be sent home before the completion?

A. Never. Staffing didn't allow that.

Q. Are you aware of any staff nurses who were involuntarily sent home before the completion of a shift?

A. No, because staffing didn't allow that. The only time anyone ever got sent home is if they were sick.

(Silloway Depo at 22:10-23:6.)

Furthermore, in verified interrogatories, the named Silloway Plaintiffs admitted, "Named Plaintiffs provide no instances on which the City denied them the ability to work a shift that was part of their normal work schedule. Rather, the opposite was generally true: The City routinely experienced a severe shortage of staff nurses to cover all available shifts." (Declaration of Spencer Wilson ("Wilson Decl.,), Ex. B at 2.) Similarly, the "Named Plaintiffs provide no instances on which the City denied them the ability to work a shift that was part of their normal work schedule. Rather, the opposite was generally true: The City routinely experienced a severe shortage of staff nurses to cover all available shifts." (Wilson Decl., Ex. B at 2-3).

3. **The Silloway Interrogatory Response is Inadmissible Because It Contradicts Plaintiff Testimony and Is Unverified**

The City anticipates that the Silloway Plaintiffs will offer as evidence a recent interrogatory response that lists the payroll periods in which the City allegedly deprived plaintiffs of the opportunity to work their full scheduled hours. The interrogatory response is not admissible. Not only is it contradicted by individual plaintiff depositions and earlier interrogatory responses, it is not verified.

a. **The Silloway Interrogatory Response.**

On May 15, 2025, Magistrate Judge Tse ordered the Silloway plaintiffs to "identify the nurses

RENNE PUBLIC LAW GROUP®

who plaintiffs contend CCSF prevented from working a regularly scheduled shift, involuntarily sent home from a shift, scheduled for fewer hours than their full-time equivalency, or denied the opportunity to work a regularly scheduled shift pursuant to the 2024– 2027 MOU" and "provide the date of each specific instance recalled." *Silloway* Dkt No. 121, Discovery Order.  Judge Tse rejected the Silloway plaintiffs' contention that it was too burdensome to contact the Silloway opt ins and stated: "the deadline set in this order, June 12, 2025, is 30 days from today and should give plaintiffs enough time to contact the opt-ins and obtain answers to CCSF's questions." *Id*.  Later, at the request of the Silloway plaintiffs, Judge Seeborg gave them until July 14, 2025, to comply.  *Silloway* Dkt. No. 133.

On July 14, 2025, the last day of fact discovery, the Silloway plaintiffs served their supplemental response to the City's interrogatory No. 24.  The response listed over 9,000 instances of alleged involuntary time off in a 232-page document.  It also provided the pay periods instead of the dates, as directed by Judge Tse.  This interrogatory response is unverified.  Fact discovery and expert discovery are closed.  *Litvinova* Dkt. No. 150, Scheduling Order.

### b.    The Interrogatory Response Is Inadmissible Because It Contradicts Plaintiff Testimony

The unverified interrogatory response is inadmissible.  The purpose of the response, as noted above, is to "identify the nurses who plaintiffs contend CCSF prevented from working a regularly scheduled shift, involuntarily sent home from a shift, scheduled for fewer hours than their full-time equivalency, or denied the opportunity to work a regularly scheduled shift pursuant to the 2024– 2027 MOU . . ." and the court provided plaintiffs additional time to contact the nurses and provide responses. *Silloway* Dkt No. 121, Discovery Order.  However, as noted above *Silloway* Plaintiffs Capacillo, Chen, Duran, Gray, Kenyon, Padilla-Brainin, Ruiz, Silloway, Solis, and Van Ewijk testified at deposition that that CCSF did not prevent them from working their normal shift.[16]  *See Supra* Section V.B.1. (citing deposition testimony). Therefore, to the extent the unverified interrogatory response contradicts the testimony of these plaintiffs, it is inadmissible.

---

[16] This Court's case management orders limited the number of plaintiffs the City could depose.  *Litvinova* Dkt. No. 130, Case Management Scheduling Order.  Accordingly, not only must this court discount any interrogatory responses regarding the deposed plaintiffs, it should not credit any interrogatory responses regarding the other opt in plaintiffs.  The City had no opportunity to depose them.

1

c.    **The Silloway Interrogatory Response is Inadmissible Because It Is Unverified**

2

3        Not only does the interrogatory responses contradict sworn testimony, the response is

4 unverified, making it inadmissible as evidence in opposition to a summary judgment motion.  Rule

5 33 of the Federal Rules of Civil Procedure requires that answers to interrogatories be verified:

6 "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in

7 writing *under oath*."  Fed. R. Civ. P. 33 (emphasis added).  "When discovery responses are not verified

8 or signed under oath, courts have repeatedly determined the unverified discovery may not be considered

9 by a court evaluating a motion for summary judgment."  *Tametria Nash-Perry v. City of Bakersfield,* ,

10 No. 1:18-CV-01512 JLT, 2021 WL 3883681, at *5 (E.D. Cal. Aug. 31, 2021); *Wilson v. Frito-Lay N.*

11 *Am., Inc.*, 260 F. Supp. 3d 1202, 1212 (N.D. Cal. 2017) (disregarding interrogatory responses submitted

12 in opposition to summary judgment that the plaintiff "did not sign or verify . . . when they were served,"

13 finding the interrogatory responses were inadmissible);  *United States ex rel. Dahlstrom v. Sauk-Suiattle*

14 *Indian Tribes*, No. C16-0052JLR, 2019 WL 4082944, at *13 (W.D. Wash. Aug. 29, 2019) (noting the

15 requirements of Rule 33 that interrogatories be answered "in writing under oath," and finding an

16 "unsigned and unverified interrogatory response is insufficient to raise a genuine factual dispute meriting

17 trial"); *Cavanagh v. Ford Motor Co.*, 2017 WL 2805057, 2017 WL 2805057, at *7 (E.D.N.Y. June 9,

18 2017) (holding unverified answers to interrogatories cannot "create a genuine issue of material fact that

19 would allow Plaintiffs to survive summary judgment").  Accordingly, it is inadmissible in opposition to

20 the City's summary judgment motion or any other motion filed by the City.[17]

21

22 _____

[17] Should Silloway Plaintiffs attempt to belatedly authenticate the interrogatory responses, after this
23 motion is filed, they will be unable to show any "substantial justification" for a late authentication or that
it is "harmless."  See Rule 37(c) (1); *Yeti by Molly, ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-
24 07 (9th Cir. 2001).  Plaintiffs' actions were not only unjustified, they were in bad faith.  Judge Tse's
order anticipated that Silloway Plaintiffs would ask the opt-in plaintiffs if the City had ever deprived
25 them of working a regular shift.  (*Silloway* Dkt. No. 121)  It is apparent that rather than conduct that
inquiry, the Silloway Plaintiffs came up with 9,000 alleged instances of unpaid time from an unknown
26 source.  Nor is the lack of a verification harmless.  The Silloway Plaintiffs ambushed the City on the last
day of discovery with the 9,000 unverified instances without any information as to origin.  See *Payne v.*
27 *Exxon Corp*, 121 F.3d 503, 508 (9th Cir. 1997) ("Many of the discovery responses eventually tendered by
the plaintiffs came only as the discovery period was drawing to a close or after it had closed.
28 [Defendants] were therefore deprived of any meaningful opportunity to follow up on that information, or
to incorporate it into their litigation strategy.")

1

2      **d.    The Expert Report of Andrea Don Is Unreliable and Should be
          Excluded**

3

4      The only other evidence the Silloway Plaintiffs offer in support of their case is the expert

5      report of Ms. Don.  As established in the City's *Daubert* motion, Ms. Don's report should be

6      excluded, and even if the Court does not exclude it entirely, the report is not reliable or relevant.

7      Ms. Don is not a qualified expert.  *See Silloway,* Dkt. No. 152, City's *Daubert* Motion to Exclude

8      Expert Andrea Don, at 8-10.  Her methodology is not reliable because she did not provide the data

9      on which she formed her opinions and she did not bring independent expertise to her task.  *Id.* at pp.

10     10-13.  Moreover, her opinions are not relevant because they are contradicted by deposition

11     testimony of nurses who testified they had not been deprived of the opportunity to work a shift.  *Id*

12     at pp. 13-15.

13     As a result of the unverified interrogatory's inadmissibility and the unreliability and irrelevance

14     of Andrea Don's report, the Silloway Plaintiffs have no evidence to rebut the City's showing that it

15     complies with Section 710.

16     **4.    Even If This Court Considers the Flawed Evidence Above, Summary
          Judgment Against the Silloway Plaintiffs Who Were Deposed is Proper**

17

18     At summary judgment, the Court is not required to adopt unreasonable inferences from

19     circumstantial evidence.  *See Claus*, 2023 WL 4118016, at *1  (citing *McLaughlin*, 849 F.2d 1205, at

20     1208 (9th Cir. 1988)).  When this rule is applied, it is clear that the claims of the *Silloway* Plaintiffs who

21     were deposed should be dismissed.

22     The City has direct evidence with regard to several Silloway Plaintiffs that no liability exists.

23     During the relevant time, all the Silloway Plaintiffs who were deposed (Capacillo, Chen, Duran, Gray,

24     Kenyon, Padilla-Brainin, Ruiz, Silloway, Solis, and Van Ewijk), admitted that they were not sent

25     home or deprived the opportunity to work.  *See supra* Section V.B.1. (citing Silloway Deposition

26     Transcripts).  The named plaintiffs, Silloway, Duran, and Van Ewijk, confirmed in verified

27     interrogatory responses that they were not sent home or deprived the opportunity to work.  *See*

28     *supra id*.  These admissions are direct evidence that the City has no liability with respect to any of

Renne Public Law Group®

1    these Plaintiffs.

2         The only evidence provided by the Silloway Plaintiffs, assuming it is considered despite its

3    many faults, is circumstantial.  As discussed above, the interrogatory response is not verified and

4    Ms. Don admits she did not speak to any plaintiff.  *See supra* Section V.C.3; (Krzywicki Decl. Ex.

5    E, Don Depo. 41:14-15). This evidence is circumstantial.  Any request by Silloway Plaintiffs that

6    the Court draw inferences from this circumstantial evidence in their favor, despite contrary direct

7    evidence, is facially unreasonable and should be rejected.

8         **D.    Summary Judgment Must Be Entered Against The Litvinova Plaintiffs.**

9              **1.    Litvinova's Refusal To Respond to Discovery Requests Resulted In
                    Evidentiary Sanctions.**

10

11        The Litvinova Plaintiffs refused to respond to the City's discovery.  The City served discovery in

12   this action in December 2024 and January 2025, including interrogatories, document requests and

13   deposition notices for four plaintiffs.  *Litvinova* Dkt. No. 180, Order Granting Sanctions, at 2.

14   Litvinova's counsel made meritless objections to some of the City's interrogatories, did not respond at all

15   to other requests, and violated the April 15, 2025, discovery deadline.  *Id.*  The City moved to compel,

16   and the assigned magistrate judge ordered Litvinova to seek an extension of the discovery deadlines from

17   this Court.  *Id.*  On May 13, 2025, this Court ordered Litvinova Plaintiffs to respond to the City's

18   outstanding written discovery and to produce plaintiffs noticed for deposition.  *Id.*  The Court initially set

19   the deadline for June 30, 2025 and, at Litvinova counsel's request, revised the deadline to July 14, 2025.

20   *Id.* at 3.  Litvinova Plaintiffs then violated this Court's order.  *Id.*  Litvinova did not serve any responses

21   to the written discovery issued by the City and produced only one of the four plaintiffs noticed for

22   deposition.  *Id.*  The City moved for sanctions.

23        On September 5, 2025, the Court granted that motion and issued a variety of sanctions owing to

24   Litvinova's refusal to respond to discovery requests.  S*ee generally*, *Litvinova* Dkt. No. 180, Order

25   Granting Sanctions.  Litvinova Plaintiffs still has not responded to the City's discovery.  Wilson Decl. at

26   ¶ 10.

27

28

RENNE PUBLIC LAW GROUP®

RENNE PUBLIC LAW GROUP®

2.    **The Only Evidence Available To Litvinova Shows that the City Meets the Salary Basis Test.**

The Ninth Circuit Court of Appeals remanded for a determination whether the City gives the plaintiff nurses the opportunity to work their full shifts as required by the salary basis test. *Silloway*, 117 F.4th at 1079. As a result of this Court's sanctions order, the Litvinova Plaintiffs are limited to using evidence that supports the City's position that it meets this test.

The Court's Order Granting Sanctions limits the evidence available to the Litvinova Plaintiffs. Specifically, the Court ordered "that the *Litvinova plaintiffs are limited to providing evidence from the deposition testimony* of the Litvinova plaintiffs who appeared for deposition. They are: Litvinova, Grace Bondoc, Santiago Hayo, Ryan Hood, Romulo Adiao, Jacqueline Savage, and Virginia Bryant." *Litvinova* Dkt. No. 180, at 11 (emphasis added). The deposition testimony of each of these seven nurses supports the City's position. Critically, the staff nurses testified that during the period of this lawsuit, the City had *never* prevented them from working their normally scheduled shift, scheduled them for fewer hours than their FTE, or sent them home early from a shift against their will. *See supra* Section V.B.1 (citing Litvinova Deposition Transcripts). Because the Litvinova Plaintiffs are limited to presenting evidence contained in the deposition testimony of the seven remaining nurses in the Litvinova matter and that testimony supports the City's position, they cannot counter the City's evidence that it meets the salary basis test.

3.    **The Litvinova Plaintiffs Cannot Present Any Contrary Evidence**

As discussed above, the FLSA requires a public employer to refrain from preventing an employee from earning her or his salary. *Silloway*, 117 F.4th, at 1079. The City served interrogatories to ascertain if the Litvinova Plaintiffs had any evidence to support their claims beyond what was discussed in their depositions. The Litvinova Plaintiffs never responded to the City's interrogatories. The Court sanctioned the Litvinova Plaintiffs for this failure.

Most importantly for the instant motion, the Court ordered that it is established that the Litvinova Plaintiffs are "unaware of any facts, documents or persons with information" supporting any contention of any involuntary shortfall in any of the 72 pay periods identified by the Ninth Circuit, and that Plaintiffs "are prohibited" from making any claim that the 72 pieces of missing data show a violation of

RENNE PUBLIC LAW GROUP®

Section 710 and from introducing into evidence any testimony, facts or documents that involve information requested by" the City's Special Interrogatory 31. *Litvinova* Dkt. No. 180, Order Grainting Sanctions, at 10.

Similarly, the Court's order establishes that the Litvinova Plaintiffs are unaware of any information indicating that (1) the City policies violate the salary basis test, (2) the City has ever sent nurses home or denied them the opportunity to work a regular shift, and (3) the City denied a nurse the opportunity to work a regularly scheduled shift pursuant to paragraphs 313 or 314 of the nurse MOU. *Id.* at 9-11. Plaintiffs are also prohibited from offering evidence on these topics. *Id.*

Thus, under the terms of the Order Granting Sanctions, the only evidence available to the Litvinova Plaintiffs is the deposition testimony, which supports the City's position that it complied with the salary basis test. Because the only evidence supports the City's position, there is no genuine issue of material fact, and the Court should grant summary judgment in the City's favor.

### 4. If the Court Grants the Daubert Motion Against the Litvinova Plaintiff's Expert, the Same Analysis Presented Above Applies

The City is moving to strike the Litvinova Plaintiffs' damages expert in a *Daubert* challenge filed simultaneously with this motion. *See Litvinova* Dkt. No. 198. The Litvinova damages expert relied on California law, not the FLSA law that applies here, making his damages estimates unreliable and irrelevant. Once this report is excluded, the Litvinova Plaintiffs will be in the same position as the Silloway Plaintiffs, lacking the necessary expert to establish damages. Accordingly, the City's argument that summary judgment is proper due to the plaintiffs' inability to establish damages at trial also applies to the Litvinova plaintiffs. *See Supra* Section V.C.1.

### E. Defendant Is Entitled To Summary Judgment With Respect To The Claims Of Opt-Ins Who Are Not Proper Plaintiffs

The *Litvinova* and *Silloway* lawsuits are both premised on the allegation that Dual Status Nurses can choose to pick up additional work as P103 nurses beyond their regular work schedules. This theory is not applicable to Staff Nurses or P103 Per Diem Nurses who do not work in a dual status. (*See Litvinova* Dkt. 41 (Order limiting collective action to Plaintiffs working in a dual status); *Silloway* Dkt. 1 at 7:6-7 (Complaint limiting allegations to "similarly situated dual-status registered nurses.").)

The *Silloway* Plaintiffs concede that there are 18 Plaintiffs who are not Dual Status Nurses. There are no triable issues of facts supporting these Plaintiffs' claims and Plaintiffs' counsel concedes they should be dismissed from this action. (*See* Wilson Decl. ¶ 9, Ex. C.).[18]

### F.    There Are No Triable Issues of Fact With Respect to the Deposed Plaintiffs.

Although the City is entitled to summary judgment, should that not be granted, the City is entitled to partial summary judgment in its favor with respect to each of the deposed Plaintiffs, including the named plaintiffs in each lawsuit. *See supra* Section V.C.4. & V.D.

### G.    The City Acted In Good Faith

Although the City is entitled to summary judgment, should that not be granted, the City is entitled to partial summary judgment in its favor on the issue of good faith.

Employers found to have violated the FLSA will ordinarily pay "liquidated damages" as part of the remedy. 29 U.S.C. § 216(b). Liquidated damages are usually equivalent to the amount of actual back pay (thus the back pay is essentially doubled). However, if an employer can show that it acted in "good faith," a court may award no liquidated damages, or a lesser amount. 29 U.S.C. § 260.

"Good faith" is defined as "honesty of intentions . . . no knowledge of circumstances which ought to put him upon inquiry." 29 C.F.R. § 790.15. The key question is whether the employer "in acting or omitting to act as he did . . . acted as a reasonably prudent man would have acted under the same or similar circumstances . . . ." *Id.*; *see also Bratt v. Cnty. of Los Angeles*, 912 F.2d 1066, 1071 (9th Cir. 1990). Here, there is no question that the City's representative acted in a reasonable and prudent manner.

In approximately 2009, Classification and Compensation Director Steve Ponder researched DOL regulations and guidance to determine whether Internal Per Diem Nurses—*i.e*, Staff Nurses who also work additional shifts as P103 Nurses—qualify for exemption under the FLSA. (Ponder Decl. ¶ 29.) In particular, Mr. Ponder focused on the question of whether these nurses were paid a salary within the meaning of the FLSA salary basis test. (Ponder Decl. ¶ 29.) Mr. Ponder determined that the City's

---

[18]    The Silloway Plaintiffs who both Plaintiffs' and Defense counsel agree are not Dual Status Nurses are: Anne Andrews, Andrew Baker, Elizabeth Cheung, Ananda Cousette, Julien Ekah, Jennifer Esteen, Louis Hixson, Tamara Ann Houston, Ada Kwok, Mikyoung Lim, Aaron Morris Luxenberg, Lorena Sotelo Malaga, Salini Nand, Mark Philpot, Jada Rodriguez, Vivian Renee Rounds, Yin Theint, and Michelle Abad. (Wilson Decl. ¶ 9, Ex. C.)

RENNE PUBLIC LAW GROUP®

arrangement was in full compliance with the FLSA salary basis test and detailed his conclusions in a memorandum that he shared with his supervisor. (Ponder Decl. ¶ 29, Ex. G.)

Mr. Ponder properly concluded that registered nurses who are registered with the state licensing board meet the duties test of learned professionals. (Ponder Decl. Ex. G (citing 29 C.F.R. § 541.301(e)(2).)  He also properly determined that, as a public agency that provides vacation and sick leave to its employees, deduction may be made to an employee's salary for absences due to personal reasons, illness, or injury if (1) permission to take leave has not been sought or has been sought and denied; (2) accrued leave has been exhausted, or; (3) the employee chooses to take leave without pay. (Ponder Decl. Ex. H (citing 29 C.F.R. § 541.710).)  And he also properly concluded that the City may provide overtime or other additional compensation to Staff Nurses without losing the overtime exemption. (Ponder Decl. Ex. H (citing 29 C.F.R. § 541.604).)

Mr. Ponder has periodically revisited his analysis, but has not seen any information causing him to second guess his original conclusion that Dual Status Nurses are exempt Learned Professionals. (Ponder Decl. ¶ 29.)

It is Defendant's strong conviction that Steve Ponder's analysis was accurate and that his conclusions were in full compliance with the FLSA.  However, if this Court ultimately disagrees, it certainly cannot fault his considerable efforts, which are supported by an abundance of law.  For these reasons, the Court should find that the City's actions were in good faith.

## H.    The City's Actions Were Not Willful

The City also is entitled to partial summary judgment in its favor on the issue of willfulness.

Plaintiffs bear the burden to show that the City acted in a "willful" manner, thus extending the statute of limitations from two years to three years. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).  Willful violations occur when the employer knew that its conduct was prohibited by the FLSA or showed reckless disregard for its requirements. *See id.* at 133.  A "good-faith but incorrect assumption that a pay plan complied with the FLSA" does not permit a finding of willfulness. *Id.* at 135.

Plaintiffs cannot meet their burden to show willfulness given the record. *See generally Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (where plaintiff bears burden of proof, defendant must either produce evidence negating the claim or show that the

1  plaintiff cannot carry its burden; burden then shifts to the plaintiff to produce evidence sufficient to

2  create a genuine issue of material fact).  The same evidence discussed above with respect to good faith is

3  equally applicable here. Plaintiffs cannot demonstrate that the City willfully violated the FLSA where, as

4  here, the City took affirmative steps to research the law, apply it to the specific facts at issue in this case,

5  and periodically revisit those conclusions.  These facts conclusively demonstrate that the City believed its

6  conduct was compliant with the FLSA.  Such facts do not support a finding of a willful FLSA violation.

7  **VI.    CONCLUSION**

8         The City is entitled to summary judgment in both of these cases.  The Silloway Plaintiffs have not

9  provided a basis for the jury to accurately estimate damages, never disclosed their damages

10 computations, and have no basis to establish a genuine dispute as to any material fact relating to liability.

11 Similarly, the only evidence available to the Litvinova Plaintiffs shows there is no genuine dispute as to

12 any material fact regarding liability as to them.  Once the City's *Daubert* motion is decided, they will

13 have the same inability to establish damages as the Silloway Plaintiffs.  Additionally, the City is entitled

14 to summary judgment regarding all plaintiffs who are not dual status nurses and for that reason are not

15 properly a part of this matter.  For the reasons state above, the City is entitled to summary judgment.

17  Dated:  October 16, 2025                              RENNE PUBLIC LAW GROUP®

19                                                        By:  */s/ Spencer J. Wilson*
                                                               Spencer J. Wilson

20                                                        Attorneys for Defendant
21                                                        CITY AND COUNTY OF SAN FRANCISCO