EDUARDO G. ROY (SBN 146316)
PROMETHEUS PARTNERS L.L.P.
1950 Broadway
30th Floor, Suite 3011
Oakland, CA 94612
Telephone: 415.527.0255
Email: eduardo.roy@prometheus-law.com

Attorneys for Litvinova Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA LITVINOVA, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | Case No. 18-CV-01494-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S MOTION FOR DECERTIFICATION OF THE RELATED LITVINOVA AND SILLOWAY FLSA COLLECTIVE ACTIONS**<br><br>Date: November 20, 2025<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br>Judge: Hon. Richard Seeborg<br><br>Complaint Filed: March 8, 2018<br>Trial Date: March 30, 2026 |
| KRISTEN SILLOWAY, CHRISTA DURAN, BRIGITTA VAN EWIJK, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendants. | Case No. 3:20:CV-07400-RS<br><br><br><br>Complaint Filed: October 23, 2020<br>Trial Date: March 30, 2026 |

# INTRODUCTION

CCSF's decertification motion rests on asserted variations in unit operations, scheduling tools, and timekeeping inputs, but the record demonstrates the collective is bound by centralized payroll administration, common pay codes and rules, uniform FTE-based scheduling, and standardized correction processes that make this FLSA collective action both common and manageable. The Ninth Circuit's "similarly situated" standard focuses on whether party plaintiffs are alike in ways that matter to resolving their FLSA claims; on this record, the common, centrally administered payroll and FTE scheduling systems, uniform TRC codes, and common policies controlling pay and leave satisfy that standard and allow adjudication with representative proof.

# LEGAL STANDARD

Section 216(b) permits collective actions by "similarly situated" employees, and the second-stage inquiry asks whether plaintiffs are alike in ways material to the disposition of their FLSA claims. At this stage, the Court takes a "more exacting look," but plaintiffs retain the burden to show similarity; decertification is not warranted where common proof can resolve liability on a classwide basis.

# ARGUMENT

**A. The collective is similarly situated because CCSF's centrally administered payroll and FTE-based scheduling framework govern all members and supply common, representative proof.**

    **1. Uniform, centralized payroll systems and TRC codes apply citywide.**

CCSF processes payroll on a uniform biweekly cadence through the Controller's Office, running time administration, absence calculations, and transmitting pay files to the bank, using standardized pay advices that itemize earnings and codes for all nurses—including dual-status nurses on a single pay advice. DPH manually converts schedules into timesheets in People & Pay using uniform codes (TRCs) across the nurse population, and dual-status nurses have two timesheets that feed a single paycheck, enabling consistent analysis across the group. Citywide rules encode FLSA-relevant designations in the system; for example, 2320 nurses are not "Z"-designated precisely so that overtime can be paid by rule, a policy implemented systemwide in

People & Pay.

The produced payroll datasets cover all opt-ins and reflect uniform TRC structures (e.g., Regular Hours, Overtime 1.5, Holiday Pay/Bank, Sick, Vacation, Standby 50%, Floating Holiday, Comp-related codes), permitting collective analyses of scheduled versus paid hours by FTE across tens of thousands of pay periods. The standardized "Staff Nurse Regular Scheduled Hours" records and recurring codes across numerous employees further evidence the uniformity of time and pay coding used for adjudication.

**B.    FTE-based scheduling and common leave/holiday pay rules are uniform and drive liability determinations.**

Nurses are scheduled based on FTEs (e.g., 1.0 = 80 hours; 0.9 = 72 hours) with standard shift structures, and CCSF's own witnesses and records confirm fixed schedules and consistent opportunities to work or be paid for FTE hours. Numerous deponents testified they were never told not to report for scheduled shifts or sent home due to lack of work, reinforcing that opportunity-to-work questions can be resolved on a collective basis.

Holiday, overtime, and leave pay practices are governed by common rules memorialized in the MOU and applied via uniform codes (e.g., legal holiday pay credited even if not worked, time-and-a-half if worked, floating holiday, vacation/sick paid at regular rate), yielding records-based, common proof.

**C.    Standardized correction and exception workflows confirm manageability.**

Errors are detected through uniform exception rules during processing; after payroll, departments submit "Problem Description Forms" to the Controller to key adjustments across the same system, providing a classwide mechanism for remediation proof and damages ascertainment. Pay periods identified with potential shortfalls are resolved through standardized pay practices (off-cycle updates, offset pay periods, leave bank deposits, daylight saving adjustments), again demonstrated through centralized code usage and supervisor confirmations—tools equally available to Plaintiffs' collective proof.

1. **CCSF's variability narrative does not defeat similarity; the asserted differences are immaterial to the FLSA issues and are addressable with representative evidence.**

CCSF cites differences in unit operations, shift lengths, and scheduling tools (e.g., OneStaff, spreadsheets, ANSOS) to argue dissimilarity, but those inputs feed the same People & Pay system and TRC framework that determine whether predetermined compensation was paid—what matters for FLSA purposes. The Ninth Circuit's "alike in ways that matter" standard does not require identical experiences or tools; rather, it focuses on whether a common policy or practice can be proven by common evidence material to liability, which Plaintiffs have here through centralized payroll data, uniform codes, and FTE scheduling rules.

Moreover, CCSF's own evidence shows hospital-wide migration to consistent scheduling tools "to make the process consistent across all units," further undercutting its variability claim. Assertions that DPH payroll lacks personal knowledge of hours worked miss the point: liability will be proven from centralized, contemporaneous records (timesheets, TRCs, pay advices, exception/correction logs) and representative testimony—standard collective-action proof.

2. **The records demonstrate classwide proof of shortfalls and a uniform method to calculate remedies.**

Plaintiffs' expert performed uniform analyses across all opt-ins using common TRC codes and FTE benchmarks, identifying shortfalls in a significant percentage of pay periods, which were computed by standardized formulas and validated with consistent leave-email review rules—exactly the type of representative analysis that supports collective adjudication. The City's criticism that individualized reasons must be investigated is overstated; those reasons, where relevant, are themselves uniformly recorded in the centralized system (e.g., HBE/HBP holiday banks, S99 standby 50%, VAP, SLP, COV, OSPP offsets), allowing classwide resolution by code-based rules and sampling where appropriate.

3. **CCSF's authorities do not compel decertification; the Ninth Circuit's framework supports maintaining the collective here.**

CCSF invokes 29 U.S.C. § 216(b) and Campbell to argue for a stringent similarity showing, but Campbell's "alike in ways that matter" standard is satisfied by the centralized payroll regime, uniform TRCs, and FTE scheduling/pay practices that govern all collective members and will resolve whether predetermined compensation was paid on a collective basis. CCSF's reliance

on post-remand, pay-period-specific explanations does not preclude collective treatment; those explanations are manifested in the same codes and processes across the group and thus can be addressed with common proof and representative methodologies, not plaintiff-by-plaintiff mini-trials.

CCSF misconstrues the Ninth Circuit's remand. The record reveals that the Ninth Circuit did not resolve all disputed legal issues in favor of CCSF, nor did it mandate individualized trials for each nurse. Rather, the Ninth Circuit explicitly held that "material factual questions remain in dispute regarding whether the City satisfied the [FLSA salary basis] test as a matter of practice," specifically highlighting unresolved fact questions concerning pay periods in which nurses appeared to have worked fewer hours than their full-time equivalencies. The remand was not an endorsement of either party's position but a directive for further proceedings to address whether the City's pay practices in these "shortfall" periods amounted to impermissible salary deductions or noncompliance with the FLSA in practice.

Despite CCSF's assertions to the contrary—stated repeatedly in its motion and proposed order—that the Ninth Circuit already "resolved the key disputed legal issues in the City's favor" and "left for resolution only individualized factual questions," that construction is plainly contradicted by the record. The Ninth Circuit left open substantial, common questions: whether the payroll, FTE scheduling, and deduction systems operate, as a matter of uniform policy and practice, in compliance with the FLSA, and whether the identified pay discrepancies reflected policy-level shortfalls or individualized, permissible deviations.

The City also claims that the remaining issues are inherently individualized due to purported "facility-by-facility" or "unit-by-unit" variation in scheduling, leave usage, or payroll practices. However, the overwhelming evidence establishes the contrary: the pay, scheduling, leave, and correction infrastructure for both 2320 and P103 nurses is systemically standardized, both in design and actual practice. City declarations, depositions, and the MOU itself confirm that all staff nurses are assigned FTE-based schedules, compensated through uniform payroll codes, and subject to citywide policies on salaried pay, overtime, leave accrual/use, and salary deductions. Where differences exist in how schedules are set or leave is requested, these are

procedural in nature but do not affect the factual uniformity and policy government of core pay practices—any deviation from scheduled hours is the product of voluntary leave, exhaustion of leave banks, or rare, documented exceptions (such as educational leave or protected absences), not ad hoc managerial discretion or individualized negotiation.

As a result, the material factual disputes that the Ninth Circuit sent back for resolution are not atomized "plaintiff-by-plaintiff" credibility contests; they are questions about the routine, policy-driven operation of CCSF's payroll and scheduling system—how shortfalls and exclusions are systematically explained (e.g., voluntary standby pay, leave exhaustion, holiday handling, off-cycle retroactive corrections), not whether every individual nurse's experience is unique.

Further, the City's own expert analysis, as well as Plaintiffs' expert rebuttal, demonstrates that the vast majority of alleged pay "shortfalls" are readily accounted for and resolved using central payroll records, supervisor explanations, and standard payroll codes. As both sides' experts agree, these disputes are tractable through collective review of citywide data rather than case-by-case, narrative testimony.

Critically, depositions and documentary evidence from a wide cross-section of nurse plaintiffs show uniform experiences: all were consistently scheduled for at least their designated FTE; none was involuntarily denied scheduled work or forced into unpaid status except in cases of voluntary leave, leave bank exhaustion, or infrequent and well-documented exceptions (such as rare disciplinary suspensions, protected accommodations, or voluntary standby in low-census units). Numerous nurses recounted never being involuntarily sent home, and no evidence suggests a widespread, managerial practice of denying nurses the opportunity to fulfill their scheduled hours.

The uniformity of policies for paid time off, sick leave, holiday pay, vacation, educational leave, and even the P103 voluntary per diem arrangement further underscores the collective nature of these claims. All leave accrual is determined by hours worked and years of service, all leave requests are subject to managerial approval following the same documented procedures, and all compensation (including paid leave, floating holidays, and P103 premium

5
OPPOSITION TO MOTION FOR DECERTIFICATION

rates) is grounded in publicly available pay rates and MOU language.

Operational and schedule exceptions—such as short work periods due to daylight savings, voluntary call-ins, or overstaffing—are universally handled through published and consistently applied policies, for example, providing the option to use accrued leave to supplement hours or providing minimum guarantees when overstaffing errors occur. The rare cases where nurses worked fewer hours than their FTE are fully explained by voluntary choices or leave exhaustion, not random or managerially-imposed loss of work.

Notably, no nurse deposition revealed any material difference in how policy is applied based on unit, worksite, or managerial staff—scheduling, pay adjustments, leave use, and corrections are processed using the same citywide forms and payroll mechanisms. Claims of facility-level variation are simply not legally or factually meaningful where all underlying systems are uniform and centrally administered.

Likewise, key payroll practices—including adjusting for missed lunches, documenting shortfalls, and submitting "Problem Description Forms" for payroll corrections—are handled using standard processes applicable to all staff nurses. These corrections are visible in payroll records and are equally available to all class members, refuting any notion that individualized, fact-intensive inquiries are necessary for collective adjudication.

As to the P103 (per diem) arrangement, it is universally voluntary for dual status nurses, always supplemental to their regular FTE-scheduled work, and is offered via uniform notice to eligible nurses with no evidence of coercion or individualized assignment outside rare, established overtime provisions.

CCSF's characterization of this record and its reliance on expert testimony to argue for individualized analysis is flawed. Both sides' experts acknowledged that anomalies or payroll shortfalls are almost always the result of common policies, leave accrual rules, and payroll codes. Where statistical disputes exist, they concern methodology and sampling rather than the operation of the City's system as a collective policy. For example, challenges to sample representativeness or completeness do not alter the key fact that all pay, leave, and shifts are coded and tracked centrally, and are subject to collective-level analysis suitable for class

resolution.

In sum, the core issues that the Ninth Circuit instructed the district court to resolve—whether CCSF's pay and scheduling systems, as actually operated, comply with the FLSA salary basis test and do not result in impermissible deductions—are squarely collective in nature. The City's attempt to recast these as individualized inquiries is unsupported by the record and contradicted by both its own witnesses and collective bargaining documents.

The City's reading of the Ninth Circuit's decision is not only incorrect but is also disproven by its own payroll and scheduling systems, centralized policies, testimony from numerous named and opt-in plaintiffs, and the expert analyses produced in this matter. There is no foundation for the claim that individualized factfinding is required for each nurse; instead, CCSF's uniform systems and the documented practices for scheduling, leave, pay adjustment, and payroll correction guarantee that the key questions are answerable as to the class as a whole.

Finally, CCSF's practice of treating a single registered nurse employee (P103/2320 hybrid RNs) performing the same work as two separate people using two separate accounts is lawlessness dressed up as "public accountability".

### 4. Common evidence of citywide policies and uniform practices further supports manageability.

The MOU governing Staff and Per Diem Nurses standardizes seniority, scheduling, overtime assignment, holiday compensation, staffing procedures, and per diem utilization across units, reinforcing the classwide nature of the pay practices at issue. Uniform testimony confirms identical duties and supervision across 2320 and P103 work, centralized scheduling announcements, and common leave/sick call processes—further proof that collective adjudication is manageable.

### CONCLUSION

Because Plaintiffs are alike in ways that matter to their FLSA claims and liability can be resolved using common, centrally maintained payroll and scheduling evidence and uniform TRC codes, the Court should deny CCSF's Motion for Decertification.

Dated: November 6, 2025                    Respectfully submitted,

PROMETHEUS PARTNERS L.L.P.


By:  */s/ Eduardo G. Roy*
     EDUARDO G. ROY
     Attorneys for LITVINOVA Plaintiffs