1  ARTHUR HARTINGER  (SBN 121521)
   ahartinger@publiclawgroup.com
2  LINDA M. ROSS (SBN 133874)
   lross@publiclawgroup.com
3  GEOFFREY SPELLBERG (SBN 121079)
   gspellberg@publiclawgroup.com
4  SPENCER J. WILSON (SBN 266938)
   swilson@publiclawgroup.com
5  PETER KRZYWICKI (MI SBN P75723)
   pkrzywicki@publiclawgroup.com
6  RENNE PUBLIC LAW GROUP®
   350 Sansome Street, Suite 300
7  San Francisco, CA 94104
   Telephone: (415) 848-7200
8  Facsimile: (415) 848-7230

9  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

11  IN THE UNITED STATES DISTRICT COURT

12  FOR THE NORTHERN DISTRICT OF CALIFORNIA

14  TATYANA LITVINOVA, individually and on behalf of all others similarly situated,

    Plaintiff,

16  v.

17  CITY AND COUNTY OF
18  SAN FRANCISCO,

    Defendant.

Case No. 3:18-CV-01494-RS

**CITY AND COUNTY OF SAN FRANCISCO'S REPLY IN SUPPORT OF CITY'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT IN THE RELATED LITVINOVA AND SILLOWAY ACTIONS.**

Date:          December 11, 2025
Time:          1:30 p.m.
Dept:          Courtroom 3, 17th Floor
Judge:         Hon. Richard Seeborg

Complaint Filed:   March 8, 2018
Trial Date:        March 30, 2026

23  KRISTEN SILLOWAY, CHRISTA DURAN, BRIGITTA VAN EWIJK, and those similarly situated,

    Plaintiffs,

25  v.

26  CITY AND COUNTY OF SAN FRANCISCO,
27  Defendant.

Case No. 3:20-CV-07400-RS

Complaint Filed:   October 23, 2020
Trial Date:        March 30, 2026

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................2

TABLE OF AUTHORITIES ........................................................................................................4

I.      INTRODUCTION ..............................................................................................................8

II.     ARGUMENT......................................................................................................................9

    A.   Summary Judgment Must be Entered Against the Silloway Plaintiffs Because They
       Need But Do Not Have a Damages Expert .................................................................9

    B.   Silloway Plaintiffs Ignore The City's Argument That They Failed To Comply With
       Rule 26's Requirements Re Damage Calculations...................................................11

       1.   Plaintiffs Waived Any Response To The City's Dispositive Argument That
          Plaintiffs Cannot Establish Damages Because They Did Not Disclose Any
          Damages Calculations.................................................................................11

       2.   Plaintiffs Waived Any Response to the City's Dispositive Argument That
          Plaintiffs Cannot Establish Damages Because They Failed to Supplement Their
          Initial Disclosures .....................................................................................12

    C.   The City is Entitled To Summary Judgment on Liability Regarding the Silloway
       Plaintiffs ..................................................................................................................12

       1.   Silloway's Section 604 Argument Is Foreclosed By The Ninth Circuit's Ruling.............13

       2.   Silloway's Argument That The City Must Affirmatively Prove The Reasons For
          Each Unpaid Absence Is Not The Law.......................................................13

       3.   Plaintiffs' Challenges to Dr. Borhani's Reports Lack Merit ...............................14

          **a.   Plaintiffs Do Not Challenge The Accuracy Of The Borhani Report. .................14**

          **b.   Dr. Borhani's Report Makes Permissible Factual Conclusions.........................14**

          **c.   Silloway's Argument About Offset Pay Periods Is Not Based In The Law ........15**

          **d.   Silloway's Argument about Daylight Savings Time starts with an
              incorrect premise and then concedes Dr. Borhani is correct ..............................15**

          **e.   Dr. Borhani's reasonable reading of the deposition transcripts only
              supports the propriety of his report ..........................................................16**

       4.   Andrea Don's Report and Testimony Should Be Excluded and Accordingly,
          Cannot Serve as Basis to Deny Summary judgment .........................................17

       5.   Even If the Court Denies the City's Motion to Exclude Ms. Don, Her Opinions
          Are Not Relevant Because Direct Evidence Contradicts Them. .......................18

       6.   Plaintiffs' Request to Draw Other Unreasonable Inferences Should be Discounted.........19

RENNE PUBLIC LAW GROUP®

7.  Even If the Silloway Plaintiffs Could Show Instances Of Improper Deductions From Pay, Liability Does Not Exist Because Silloway Plaintiffs Cannot Make The Showings Required Under Section 603 For Liability As To Any Individual Plaintiff ....................................................................................................20

D.  The City Is Also Entitled To Summary Judgment on the Issue of Its Good Faith..................20

E.  Plaintiffs' Discussion of Willfulness Does Nothing to Meet its Burden to Show the City was Willful, its Only Statement on the Issue is Conclusory. ....................................................23

F.  The City is Entitled To Summary Judgment on Liability Regarding the Litvinova Plaintiffs ....................................................................................................23

1.  The Litvinova Admissions Require Summary Judgment. ...................................24

2.  Litvinova Plaintiffs Independent Salary Guarantee Argument Is Based On The Wrong Section Of The FLSA's Implementing Regulations.................................24

3.  Litvinova Plaintiffs' Arguments regarding Controlling Legal Developments are Either Supportive to the City's Motion or Irrelevant to its Disposition ............25

4.  Litvinova's Discussion of the Remaining Factual Disputes While Apparently A Response to Decertification, Supports the City's Motion for Summary Judgment..........25

5.  Litvinova Plaintiffs Evidentiary Arguments Regarding Steven Ponder Should Be Rejected....................................................................................................26

III.  CONCLUSION....................................................................................................29

RENNE PUBLIC LAW GROUP®

1

## TABLE OF AUTHORITIES

2

**Pages**

3

**Cases**

4

*Amaretto Ranch Breedables v. Ozimals Inc.*,
5
    907 F. Supp. 2d 1080 (N.D. Cal. 2012) ...................................................................26

6
*Baden-Winterwood v. LifeTime Fitness, Inc.*,
    566 F.3d 618 (6th Cir. 2009) ...................................................................................20

7
*Bay Ridge Operating Co. v. Aaron*,
8
    334 U.S. 446 (1948) .................................................................................................10

9
*Block v. City of Los Angeles*.
    253 F.3d 410 (9th Cir. 2001) ...................................................................................22
10
*Bratt v. Cnty. of Los Angeles*,
11
    912 F.2d 1066 (9th Cir. 1990) .................................................................................22

12
*Brock v. Seto*
13
    790 F.2d 1446 (9th Cir. 1986) .................................................................................11

14
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................21, 23
15
*Chao v. A–One Med. Servs., Inc.*,
16
    346 F.3d 908 (9th Cir. 2003) ...................................................................................23

17
*Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*,
    562 F. App'x 182 (5th Cir. 2014) ...........................................................................11
18

19
*Chavez v. City of Albuquerque*,
    630 F.3d 1300 (2011) ...............................................................................................10
20

21
*Claus v. Canyon Cnty.*,
    No. 22-35292, 2023 WL 4118016 (9th Cir. June 22, 2023)...............................18, 19

22
*Coates v. Dassault Falcon Jet Corp.*,
23
    961 F.3d 1039 (8th Cir. 2020) .................................................................................20

24
*Diaz v. City of Plantation, Fla.*,
    524 F. Supp. 2d 1352 (S.D. Fla. 2006) ...................................................................23
25

26
*E.M.D. Sales, Inc. et. al. v. Carrera*,
    604 U.S. 45 (2025)...................................................................................................25

27
*Flores v. City of San Gabriel*,
28
    824 F.3d 890 (9th Cir. 2016) ..............................................................................22, 23

RENNE PUBLIC LAW GROUP®

*Herman v. Fabri-Center of Am., Inc.*,
  308 F.3d 580 (6th Cir. 2002) ................................................................................15

*Hills v. Entergy Operations, Inc.*,
  866 F.3d 610 (5th Cir. 2017) ................................................................................10

*Kalloo v. Unlimited Mech. Co. of NY*,
  977 F. Supp. 2d 187 (E.D.N.Y. 2013) ....................................................................11

*Key v. Qualcomm Inc.*,
  129 F.4th 1129 (9th Cir. 2025) ..............................................................................17

*Maliza v. 2001 Mar-os Fashion, Inc.*, No. CV-07-463 (ERK)(VVP), 2010 U.S. Dist.
  LEXIS 11509
  (E.D.N.Y. Feb. 10, 2010) .......................................................................................11

*Martinez v. Asian 328, LLC*,
  220 F. Supp. 3d 117 (D.D.C. 2016) ......................................................................11

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................................17

*McLaughlin v. Liu*,
  849 F.2d 1205 (9th Cir. 1988) ........................................................................18, 19

*Monroe v. FTS USA, LLC*,
  860 F.3d 389 (6th Cir. 2017) ................................................................................11

*Morton & Bassett, LLC v. Organic Spices, Inc.*,
  No. 15-CV-01849-HSG, 2017 WL 1425908 (N.D. Cal. Apr. 21, 2017)................16

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
  523 F.3d 1051 (9th Cir. 2008) ..............................................................................15

*Olibas v. Barclay*,
  838 F.3d 442 (5th Cir. 2016) ................................................................................11

*Orton v. Johnny's Lunch Franchise, LLC*,
  668 F.3d 843 (6th Cir. 2012) ................................................................................14

*Petrone v. Werner Enters., Inc.*,
  42 F.4th 962 (8th Cir. 2022) ..........................................................................10, 11

*Pineda-Herrera v. Da-Ar-Da, Inc.*, No. 09-CV-5140 (RLM), 2011 U.S. DIST. LEXIS
  57121
  (E.D.N.Y. May 26, 2011) .......................................................................................11

*Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*,
  52 F.4th 843 (9th Cir. 2022) ................................................................................21

RENNE PUBLIC LAW GROUP®

*Rosenfeld v. U.S. Dep't of Just.*,
   903 F. Supp. 2d 859 (N.D. Cal. 2012) .................................................................12

*Rowe v. Reynolds*,
   624 F. Supp. 3d 1036 (S.D. Iowa 2022) ............................................................14

*Sec'y of Lab. v. Timberline S., LLC*,
   925 F.3d 838 (6th Cir. 2019) ..............................................................................23

*Senne v. Kansas City Royals Baseball Corp.*,
   591 F.Supp.3d 45 (N.D. Cal. 2022) ...................................................................15

*Sernoffsky v. Novak*,
   773 F. Supp.3d 988 (S.D. Cal. 2025) .................................................................26

*Silloway v. City & County of San Francisco*,
   117 F.4th 1070 (9th Cir. 2024) .................................................................. *passim*

*Slojewski v. Polam Fed. Credit Union*,
   473 F. App'x 534 (9th Cir. 2012) ......................................................................19

*Sniadach v. Fam. Fin. Corp. of Bay View*,
   395 U.S. 337 (1969) ...........................................................................................25

*Theisen v. City of Maple Grove*,
   41 F. Supp. 2d 932 (D. Minn. 1999) ..................................................................11

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...........................................................................................18

**Statutes**

29 U.S.C.
   § 207(e)(5)-(7) ............................................................................................10, 15
   § 207(h) ..............................................................................................................10
   § 207(h)(2) ..........................................................................................................15

Cal. Lab. Code § 1182.14 .......................................................................................25

**Other Authorities**

29 C.F.R.
   § 541.301(e)(2) ...................................................................................................21
   § 541.603(a) ........................................................................................................20
   § 541.603(b) ........................................................................................................20
   § 541.604 .............................................................................................................21
   § 541.710 .............................................................................................................21
   §§ 778.107-778.122 ...........................................................................................10

RENNE PUBLIC LAW GROUP®

Fed. R. Civ. P.
   26.................................................................................................................8, 10, 11, 17
   26(b)(4)(B) ...........................................................................................................17
   26(e)(2) ..................................................................................................................17

Fed. R. Evid.
   37(c) ................................................................................................................. *passim*

RENNE PUBLIC LAW GROUP®

# I.    INTRODUCTION

The City's Motion For Summary Judgment must be granted and Plaintiffs' Motion for Partial Summary Judgment denied.

The Silloway Plaintiffs have no expert report on damages.  They have the burden of proof to prove damages and cannot meet it without a report.  Their contention that they need no expert, but can simply rely on a previously undisclosed summary, is flat wrong.  Damages here, for alleged unpaid overtime, are complex, not subject to simple arithmetic.  Their own disclosures show that.  Even if they could create a summary, they do not disclose a competent sponsoring witness and do not have one without an expert.  As they have done throughout this litigation, the Silloway Plaintiffs attempt to hide the ball and deprive the City of the opportunity to test any damages evidence during discovery.

The Silloway Plaintiffs do not even respond to the City's contention that they have violated Rule 26 by making inadequate disclosures.  Not only were their initial damages disclosures inadequate, they failed to update them.  This failure makes any evidence on damages inadmissible.

The Litvinova Plaintiffs managed to serve an expert report on damages, but their report must be excluded as unreliable.  Their expert based his calculations on more onerous California law, which does not apply here, and is prejudicial to the City.

Based on these failures, the Court must grant summary judgment in both cases and need go no further.  But even if the Court examines other evidence, it shows that the City does not deprive the nurses of the opportunity to work their regular shifts.

Remarkably, no Plaintiff has testified that the City does so.  And even though Silloway and Litvinova had over 300 opt-in plaintiffs between them, they have failed to come up with one Plaintiff who will declare, unambiguously, that the City told them not to come to work or sent them home.

Based on this lack of evidence, the Silloway Plaintiffs are forced to rely, almost exclusively, on the expert report of one of their attorneys, Andrea Don.  Her report should be excluded under Rule 37(c) as a violation of Rule 26(a) because Plaintiffs failed to disclose her underlying calculations and is otherwise unreliable.  If that happens, Plaintiffs have no evidence.

But even if Don's report is not excluded, the report is not sufficient to defeat summary judgment for the City.  Plaintiffs contend that to prevail the City must detail the reasons for every single one of the

RENNE PUBLIC LAW GROUP®

1  purported 1600 instances of unpaid time reported by Ms. Don.  This is not the law.  So long as this

2  remains a collective action, the City is entitled to rely on representative evidence.

3      The representative evidence favors the City's motion.  As stated above, plaintiffs all testified that

4  they City did not deprive them of working their regular shift.  Plaintiffs' attempt to run away from that

5  testimony shows how damning it is for their case.  The Borhani report resolved the 72 pieces of missing

6  payroll information identified by the Court of Appeals, showing in representative detail how the City's

7  complex system works to document paid and unpaid leave.

8      Significantly, Plaintiffs take no issue with the correctness of the data displayed in the Borhani

9  report.  Unlike the Don report, it shows payroll period by payroll period how plaintiffs were paid.  They

10  attack the Borhani report as unrepresentative, but their experts relied on an even smaller sample, making

11  this attack irrelevant.  They argue that the report makes legal conclusions, but in fact the report is factual

12  in nature.  They fix on a very few examples to argue that the report shows illegal pay practices but those

13  arguments fail as a matter of law.

14      The Litvinova brief makes admissions that amount to a concession that the City meets the salary

15  basis best, conceding among other things, that no nurses "were denied scheduled work or forced into

16  unpaid status" and "no evidence suggests a widespread, managerial practice of denying nurses the

17  opportunity to fulfill their scheduled hours."

18      For these reasons, the Court should grant the City's motion for summary judgment as to both

19  cases.

20  **II.    ARGUMENT**

21      **A.    Summary Judgment Must be Entered Against the Silloway Plaintiffs
         Because They Need But Do Not Have a Damages Expert**

22

23      Under the FLSA, the plaintiff has the burden of proving damages.  As demonstrated by the City's

24  Motion, to survive summary judgment a plaintiff must provide evidence such that a jury is not left to

25  speculation or guesswork.  In this case, the complexity of the damages calculation, as demonstrated by

26  the Silloway Plaintiffs own disclosures, shows that the jury needs expert testimony to calculate damages.

27  *Silloway* Dkt. 153 at 22-25.

28      Plaintiffs attempt to justify their failure to produce a damages report, arguing that damages will

RENNE PUBLIC LAW GROUP®

be calculated using arithmetic, that this case is different from *Petrone*, and that other cases have not found a damages expert necessary, *Silloway* Dkt. 159 at 26. None of these arguments have merit.

Throughout their opposition, Plaintiffs argue that damages will be based on arithmetic, an effort to suggest that calculating damages will be simple. *Silloway* Dkt. 159 at 20-21. However, the Plaintiffs do not state precisely what this arithmetic will be and, as previously established, Silloway's Rule 26 disclosures suggest such a calculation will involve multiple steps. *See Silloway* Dkt. 153 at 23-24.

Moreover, while Silloway downplays the complexity of such calculations, the Supreme Court has described the calculation as "perplexing." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 448 (1948); *see also Hills v. Entergy Operations, Inc.*, 866 F.3d 610, 614 (5th Cir. 2017) (determining FLSA regular rate used for damages calculations is "an often tricky calculation"). FLSA regulations describe a number of different algorithms to calculate the regular rate of pay, depending on how an employee are compensated. 29 C.F.R. §§ 778.107-778.122; *see Chavez v. City of Albuquerque*, 630 F.3d 1300, 1311-1314 (2011). Moreover, the FLSA offsets overtime liability where, as here, an employer provides certain contract-based overtime payments more generous than those required under the FLSA. *See* 29 U.S.C. §§ 207(h), (e)(5)-(7). Silloway fails to address any of these complexities, instead chalking them up to "arithmetic."

The sheer volume of calculations here add to the complexity of the calculations. Even if Silloway could develop a formula to calculate damages, Plaintiffs would need to run separate regular rate calculations for each pay period in which an employee was non-exempt. Even if each of the 190 some plaintiffs had, for example, 10 pay periods during which they were owed overtime, this would require 3,800 separate regular rate calculations.

Plaintiffs misconstrue the authorities cited by the City and cite to other cases where a damages expert was not used, but none of these efforts will carry the day. Plaintiffs argue that *Petrone* is distinguishable because there "the employer failed to keep accurate records of hours worked," *Silloway* Dkt. 159 at 20, but that statement is incorrect. Like here, the employer *did* have records and plaintiffs in *Petrone* argued that they could prove damages without an expert because "they could prove their damages through individual pay and time records." The Court rejected this proposition, finding that expert testimony was necessary because "clearly more analysis to be done of the evidence in this case

RENNE PUBLIC LAW GROUP®

than simple arithmetic." *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 967, 969 (8th Cir. 2022).

The other cases cited by Plaintiffs mostly involve allegations regarding off-the clock pay and are readily distinguishable.  *Olibas v. Barclay*, 838 F.3d 442, 450 (5th Cir. 2016) (trial court did not abuse discretion by relying on employee declarations to support damages where employer "failed to maintain proper records, the court did not base its decision on a clearly erroneous assessment of the evidence"); *Monroe v. FTS USA, LLC*, 860 F.3d 389, 396 (6th Cir. 2017) (estimating damages based on representative testimony permissible in collective action alleging off-the-clock overtime violations); *Brock v. Seto* 790 F.2d 1446, 1449 (9th Cir. 1986) (testimony of Department of Labor Compliance Officer necessary to compute damages and district court's exclusion was error).

The remaining cases cited by Plaintiffs are distinguishable because, unlike here, they did not involve voluminous complex calculations and none of them involved the key issue of whether an expert is necessary for the trier of fact to understand the payroll records and determine damages.  *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 186 (5th Cir. 2014) (only two plaintiffs, noting that because it was a bench trial, full compliance with Fed. R. Evid. 1006 for summary exhibits was not necessary); Kalloo v. Unlimited Mech. Co. of NY, 977 F. Supp. 2d 187, 198 (E.D.N.Y. 2013) (during a bench trial, considering summary evidence relating to only three plaintiffs); *Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 119 (D.D.C. 2016) (three plaintiffs); *Pineda-Herrera v. Da-Ar-Da, Inc.*, No. 09-CV-5140 (RLM), 2011 U.S. Dist. LEXIS 57121, at *1–2 (E.D.N.Y. May 26, 2011) (two plaintiffs); *Maliza v. 2001 Mar-os Fashion, Inc.*, No. CV-07-463 (ERK)(VVP), 2010 U.S. Dist. LEXIS 11509, at *1–3 (E.D.N.Y. Feb. 10, 2010); *Theisen v. City of Maple Grove*, 41 F. Supp. 2d 932, 934, 936–41 (D. Minn. 1999) (two plaintiffs).

### B. Silloway Plaintiffs Ignore The City's Argument That They Failed To Comply With Rule 26's Requirements Re Damage Calculations.

#### 1. Plaintiffs Waived Any Response To The City's Dispositive Argument That Plaintiffs Cannot Establish Damages Because They Did Not Disclose Any Damages Calculations

Silloway does not respond at all to the City's argument that Silloway's failure to adequately disclose their damages calculations under Rule 26 precludes them from establishing damages at trial.  *See Silloway* Dkt 153 at 24.  Silloway has therefore waived any potential response, effectively conceding that

the City is entitled to summary judgment. *Rosenfeld v. U.S. Dep't of Just.*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue").

### 2. Plaintiffs Waived Any Response to the City's Dispositive Argument That Plaintiffs Cannot Establish Damages Because They Failed to Supplement Their Initial Disclosures

The City argued in its motion that the Silloway Plaintiffs never complied with Rule 26(e) because they never supplemented their disclosure despite receiving more than 2 million additional lines of payroll data. *Silloway* Dkt 153 at 25. The Silloway Plaintiffs do not respond to this argument. *See generally, Silloway* Dkt 159. Thus, the Silloway Plaintiffs waived any potential response, effectively conceding that the City is entitled to summary judgment. *Rosenfeld*, 903 F. Supp. 2d at 869

### C. The City is Entitled To Summary Judgment on Liability Regarding the Silloway Plaintiffs

The City is entitled to summary judgment because it provided evidence that there is no genuine dispute that it provided the Plaintiffs with the opportunity to work their full standard hours or FTE. In doing so, the City established, as a matter of law, that it complied with the salary basis test for public employers articulated by the Ninth Circuit. *Silloway*, 117 F.4th at 1079.

In particular, the City produced evidence sufficient to establish the following. All Staff Nurses are assigned to a consistent normal schedule according to their FTE, or standard hours. *Silloway* Dkt. 153 at 17.[1] The City's payroll practices are consistent with Section 710. *Silloway* Dkt. 153 at 17-18. All staff nurses who were deposed admitted that they were not, or could not recall, being sent home or denied the opportunity to work a regular shift. *Silloway* Dkt. 153 at 18-19. The City also updated its expert report, addressing the questions posed by the Ninth Circuit on remand. *Silloway* Dkt. 153 at 19-22.

None of the arguments presented in Silloway's Opposition undermine the City's entitlement to summary judgment.

---

[1] Where it is not otherwise noted, docket citations are to the *Silloway* docket.

RENNE PUBLIC LAW GROUP®

1

   **1.**  **Silloway's Section 604 Argument Is Foreclosed By The Ninth Circuit's Ruling.**

2

   Silloway Plaintiffs argue that the court should deny summary judgment because "while the Ninth

3

Circuit did not reach § 604, it noted that if an employer 'provide[s] additional compensation' on top of an

4

alleged salary, the employer must satisfy § 604(a) in addition to § 602. *Silloway v. City & County of San*

5

*Francisco*, 117 F.4th 1070, 1075 (9th Cir. 2024)." *Silloway*, Dkt. No. 159 at 13.  But this argument is

6

foreclosed by the Ninth Circuit ruling.  The Court held: "Essentially, if an employer satisfies § 602(a), it

7

can provide additional compensation under § 604(a) *on any basis*." *Silloway*, 117 F.4th at 1075

8

(emphasis added).  Thus, Section 604 is irrelevant.[2]

9

   **2.**  **Silloway's Argument That The City Must Affirmatively Prove The Reasons For Each Unpaid Absence Is Not The Law.**

10

11

   Silloway Plaintiffs assert that, "the City must somehow prove [any payroll deductions] were

12

allowed under §§ 602 and 710." *Silloway* Dkt. 159 at 20; *see also id.* at 9.  They argue that their expert

13

has shown 1600 unaccounted for payroll deductions (which the City denies) and that the City must prove

14

that each and every one of them is permissible under the law.  Dkt. 159 at 22.  That is not the law.[3]  As

15

stated by the Ninth Circuit, the question is whether a public employer gives its employees "the

16

*opportunity* to earn predetermined amounts on a weekly or less frequent basis . . . ." *Silloway*, 117 F.4th

17

at 1079 (emphasis added). The direct evidence in this case shows that the City does so.

18

   First, this case is brought as a representative action under the FLSA.  The Court has directed that

19

the case proceed based on representative proof by limiting the City to 25 plaintiff depositions and a

20

defined number of interrogatory responses and document requests.  *See Litvinova* Dkt. 130 at 2.  The

21

City has conducted this limited discovery.  Depositions establish that plaintiffs were never deprived of

22

working a regular shift or at least that they do not so recall.  *Silloway* Dkt. 161 at 14, 15.  The Silloway

23

and Litvinova named plaintiffs responded the same in interrogatory responses.  *Litvinova* Dkt. 197-10 at

24

10-11, 30.  Having failed in their representative proof, Plaintiffs now want the City to come forward with

25

26

[2] If the Court is interested in learning about Silloway Plaintiffs' failed efforts to get reconsideration of the Section 604 issue or why their reading is generally untenable, the City provided a detailed response to this issue in its opposition brief.  *Silloway* Dkt. 162 at 26-28.

27

28

[3] If it were the law, this case must be decertified, as shown in the City's motion for decertification.

proof for every plaintiff and every contested pay period.  Plaintiffs do not cite any authority for this requirement.

Second, the authority Silloway cites is inapposite.  Silloway argument is based on *Rowe v. Reynolds*, 624 F. Supp. 3d 1036 (S.D. Iowa 2022), but that case is distinguishable because it is based on a different statute, not applicable here.[4] *Orton v. Johnny's Lunch Franchise, LLC* is also inapposite.  *Orton* held only that nonconclusory allegations in a complaint must be accepted as true requiring reversal of a motion to dismiss.  *Orton v. Johnny's Lunch Franchise, LLC ,*668 F.3d 843, 849–50 (6th Cir. 2012).The case did not involve a public employer, was not a collective action, and most important did not involve admissions by the plaintiff during discovery that demonstrated exempt status. *Id.*

### 3. Plaintiffs' Challenges to Dr. Borhani's Reports Lack Merit

#### a. Plaintiffs Do Not Challenge The Accuracy Of The Borhani Report.

Surprisingly, Plaintiffs do not challenge the accuracy of the payroll data included in Dr. Borhani's report, in other words how the nurses were paid.  *Silloway* Dkt. 159 at 16.  Instead, they only challenge whether those Plaintiffs are representative of the collective.  *Silloway* Dkt. 159 at 16.  Plaintiffs base their allegation on a study of only 13 plaintiffs, not the 26 examined by Dr. Borhani, which means this contention must be rejected, as demonstrated in the City's Opposition to the motion to exclude Dr. Borhani.  Dkt. 162 at 6.  But Plaintiffs' failure to contest Dr. Borhani's conclusions as to the sample Plaintiffs leaves Dr. Borhani's evidence undisputed.  By failing to contest the accuracy of the City's resolution of the factual issues raised by the Ninth Circuit, the Plaintiffs effectively admit that the City has successfully resolved the issues on remand in the City's favor.

#### b. Dr. Borhani's Report Makes Permissible Factual Conclusions

Plaintiffs argue that Dr. Borhani makes impermissible legal conclusions, *Silloway* Dkt. 159 at 16-17, but this challenge mischaracterizes Dr. Borhani's report and ignores governing law.  When testimony in the form of an opinion is otherwise admissible, it is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact.  Fed. R. Evid. 704.

Dr. Borhani's expert report is in keeping with this rule and the text cited by Plaintiffs is not to the

---

[4] *See* City's Opposition To Silloway Motion For Partial Summary Judgment, Dkt. 161, at 24-25.

RENNE PUBLIC LAW GROUP®

1    contrary: "[t]he data shows that all of these plaintiffs were assigned to an FTE level (for example 1.0,

2    0.9, or 0.6) and that, like the named plaintiffs, were consistently provided the opportunity to work or be

3    paid according to their FTE." *Silloway* Dkt. 153-2 at 19.  This sentence expresses an opinion about the

4    data—it is not objectionable simply because it embraces an ultimate issue to be decided by the jury.

5          Dr. Borhani's report is distinguishable from the case in *Nationwide Transp. Fin. v. Cass Info.*

6    *Sys., Inc.* in which the Ninth Circuit upheld a district court decision excluding testimony because their

7    report applied the Uniform Commercial Code and agency law, discussed the parties' legal rights, and

8    labeled the parties' actions as wrongful.  *Nationwide Transp. Fin. v. Cass Info. Sys.,* 523 F.3d 1051,

9    1058-59 (9th Cir. 2008).  Dr. Borhani, on the other hand, both in the quoted text and in the rest of his

10   report, does not claim to apply the FLSA nor does he label the City's practices as consistent with the

11   FLSA or the salary basis test.  He offers an opinion about his understanding of the facts and he does not

12   provide any legal conclusion.

13                   **c.**     **Silloway's Argument About Offset Pay Periods Is Not Based In The**
                                **Law**
14

15         Plaintiffs argue that there is no legal basis to use pay in one pay period to explain pay shortfalls in

16   another. *Silloway* Dkt. 159 at 17.  Silloway misrepresents *Herman v. Fabri-Center of America*, which

17   held that the "workweek or work period is central to an understanding of § 207(h)(2*)."  Herman v.*

18   *Fabri-Center of Am., Inc.*, 308 F.3d 580, 592 (6th Cir. 2002).  This section of the FLSA permits

19   employers to offset FLSA overtime owed to non-exempt employees with certain contract-based overtime

20   described in 29 U.S.C. § 207(e)(5)-(7).  But that section is not at play here.  *Herman* has nothing to do

21   with exempt salaried employees. Silloway's reliance on *Senne v. Kansas City Royals Baseball Corp*., 591

22   F.Supp.3d 453, 541 (N.D. Cal. 2022) is also misplaced because *Senne* examined whether hiring bonuses

23   could be used to offset FLSA minimum wage violations occurring in future workweeks, another issue not

24   present here.  On the contrary, the salary basis test is not subject to the same work period restrictions

25   governing non-exempt employees.

26                   **d.**     **Silloway's Argument about Daylight Savings Time starts with an**
                                **incorrect premise and then concedes Dr. Borhani is correct**
27

28         Silloway Plaintiffs argue that the City causes nurses to receive one less hour of pay when they

RENNE PUBLIC LAW GROUP®

1   work at the start of daylight savings in March.  They contend that Dr. Borhani improperly justified the

2   impact of daylight savings time on the basis that nurses could use vacation or other accrued leave to get

3   paid for the lost hour.  *Silloway* Dkt. 159 at 18-19.  But this argument is based on the incorrect premise

4   that the City causes nurses to receive one less hour of pay when they work during the spring daylight

5   savings time shift.

6           The City does not cause the existence of a 23-hour day or daylight savings time. In November of

7   1949, the State of California adopted daylight savings time and, as a result, it caused the existence of a

8   23-hour day. See repository.uclawsf.edu/ca_ballot_props/502/. It is impossible for the City to pay an

9   employee for an hour of work that does not exist without offending the public accountability principle.

10  *Silloway*, 117 F.4th at 1079 (9th Cir. 2024) ("the purpose of the public accountability principle: to

11  prevent public employers from spending taxpayers' money on employees who are not working"). By the

12  same token, it is not possible for the City's 24-hour medical facilities to limit staff nurse hours to 24,

13  when the clocks skip back, creating a 25-hour day. In those situations, the City pays affected nurses for

14  the additional hour worked, paid at the overtime rate mandated by the nurses' MOU.  *Silloway* Dkt. No.

15  153-7, at 64-65 (MOU §§ 371-384).   Thus, daylight savings time is not a basis for liability.

16          Silloway acknowledges evidence that Plaintiffs may supplement an hour unworked due to

17  daylight savings with an hour of accrued leave.  *Silloway*  Dkt. No. 147, at 23. In fact, the Don report

18  examined over 400 pay periods where a nurse worked a daylight-saving shift and found that most of the

19  time nurses were paid for the entire shift. *Silloway* Dkt. No. 153-2, at 190. To the extent any particular

20  nurse claims to be unaware of this practice, such unawareness does not support any adverse inferences

21  against the City.  *Morton & Bassett, LLC v. Organic Spices, Inc.*, No. 15-CV-01849-HSG, 2017 WL

22  1425908, at *1 (N.D. Cal. Apr. 21, 2017).. Thus, Silloway's daylight savings time arguments lack merit.

                        **e.      Dr. Borhani's reasonable reading of the deposition transcripts only
                                  supports the propriety of his report**

25          Silloway argues that Dr. Borhani erred because he understood that when nurses "generally

26  testified they have not been 'told not to come in []' for a shift on their regular schedule and have not been

27  'sent home after reporting' for a shift on their regular schedule" that meant that the nurse had the

28  opportunity to work her or his full regularly scheduled hours.  *Silloway*  Dkt. No. 147, at 23. The

RENNE PUBLIC LAW GROUP®

1    deposition testimony speaks for itself. *See Silloway* Dkt. 161 at 15. Plaintiffs' contentions otherwise

2    must be rejected.

3         **4.    Andrea Don's Report and Testimony Should Be Excluded and Accordingly,
                   Cannot Serve as Basis to Deny Summary judgment**

4

5         The only evidence the Silloway Plaintiffs affirmatively offer in support of liability is the expert

6    report of Ms. Don.  Dkt. 159 at 22-23.  As established in the City's Daubert motion and its reply in

7    response to the Plaintiffs' opposition thereto, Ms. Don's report should be excluded.  Dkt. 152 and 165.

8         Plaintiffs misconstrue the City's argument, attempting to save Ms. Don's report and testimony.

9    Plaintiffs contend that "The City points out that Don did not turn over her draft analysis, Dkt. No. 153 at

10   30, but it never moved to compel the same.  See Fed. R. Civ. P. 26(b)(4)(B)."[5]  Dkt. 159 at 23.  To the

11   contrary, the City's position is that the Plaintiffs violated <u>Rule 26(a)</u> because they never turned over a

12   complete statement of the basis for her opinions.  Failure to comply with Rule 26(a) results in Rule

13   37(c)(1) sanctions.  Rule 37(c)(1) explains that a "party that without substantial justification fails to

14   disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as

15   required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at

16   a hearing, or on a motion any witness or information not so disclosed."  Accordingly, Ms. Don's expert

17   report is inadmissible due to the Plaintiffs failure to disclose the underlying analysis.  Rule 37(c)(1) is

18   self-executing and automatic. *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1143 (9th Cir. 2025).

19        If the Court excludes Ms. Don, then summary judgment in the City's favor is proper because

20   inadmissible evidence cannot be used to defeat a motion for summary judgment. *See McGlinchy v. Shell*

21   *Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (affirming a district court's grant of a summary judgment

22   motion after excluding expert testimony because it was inadmissible).

23

24

25

26   ────────────────
     [5] Inexplicably, Plaintiffs brief appears to contend, without any support, that it is the City's fault that the
     Plaintiffs ignored their obligations under Rule 26(a).  Such a position is directly at odds with the purpose
27   of Rule 26(a) which "imposes on parties a duty to disclose, without awaiting formal discovery requests,
     certain basic information that is needed in most cases to prepare for trial or make an informed decision
28   about settlement."  Fed. R. Civ. P. 26 advisory committee's note (1993)

RENNE PUBLIC LAW GROUP®

5.    **Even If the Court Denies the City's Motion to Exclude Ms. Don, Her Opinions Are Not Relevant Because Direct Evidence Contradicts Them.**

Even if it admits Ms. Don's report, the Court should decline the Plaintiffs invitation to draw an unreasonable inference from the circumstantial evidence in her report.  Plaintiffs argue that according to Ms. Don, in more than 6% of pay periods "the Silloway nurses were paid less than the predetermined amount expected based on their FTE schedule with no unpaid absence or other reason for a deduction recorded." *Silloway* Dkt. 159 at 16.  This is circumstantial evidence.  Ms. Don admitted in her deposition, she "didn't speak to any of the plaintiffs." *Silloway* Dkt. No. 153-6, at 109.  The direct evidence, testimony from the Plaintiffs themselves, contradicts Ms. Don's report.  For example, included in the 6% figure that Plaintiffs discuss frequently, are absences for Ms. Silloway. *Silloway*  Dkt. No. 147-37, at 18.  But Ms. Silloway said that the City *never* sent her home and *never* denied her the opportunity to work.  *Silloway* Dkt. No. 153-9, at 1095-96 ( Silloway Depo. at 22:10-23:6).  This testimony makes Plaintiffs' contentions unreasonable. At summary judgment, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See Claus v. Canyon Cnty.*, No. 22-35292, 2023 WL 4118016, at *1 (9th Cir. June 22, 2023) (citing  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Importantly, the evidence supplied by Ms. Silloway and the other testifying plaintiffs  is representative of the entire collective.  Representative evidence may be used to defend against liability in a collective action.  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454-55, 457 (2016) ("A representative or statistical sample, like all evidence, is a means to establish **or defend** against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action.") (emphasis added).  Ms. Silloway also testified that no other nurses were ever sent home or denied the opportunity to work.  *Silloway* Dkt. No. 153-9at 1096 ( Silloway Depo. at 22:10-23:6).  Ms. Silloway and the other named Plaintiffs in the *Silloway* action confirmed the statements in Ms. Silloway's deposition in verified interrogatory responses.  *Silloway* Dkt. No. 153-10, at 10-11.  All other deposed staff nurses testified that, during the period covered by this lawsuit, they were not, or could not ever recall being, sent home or denied the opportunity to work a regular shift.  Dkt. 163 at 14, 15.

Renne Public Law Group®

1    Indeed, Litvinova concedes "[n]umerous nurses recounted never being involuntarily sent home, and no

2    evidence suggests a widespread, managerial practice of denying the nurses the opportunity to fulfill their

3    scheduled hours." Litvinova Dkt. 207, at 7.  Plaintiffs have no admissible evidence to the contrary.[6]

4    Given the complete uniformity of the evidence, it is reasonable to treat this evidence as representative,

5    view Plaintiffs' contentions as unreasonable inferences from circumstantial evidence, and find the City

6    established that it is entitled to summary judgment

7            **6.    Plaintiffs' Request to Draw Other Unreasonable Inferences Should be
                Discounted.**

8

9            Plaintiffs argue that beyond the testimony of Ms. Don, "there is other evidence from which a

10   reasonable jury could conclude the City has an actual practice of improper deductions, not tied to

11   absences caused by the nurses."  *Silloway* Dkt 159 at 24.  However, this other evidence is circumstantial

12   and would require drawing an unreasonable inference. *See Claus*, 2023 WL 4118016, at *1 (*citing*

13   *McLaughlin*, 849 F.2d at 1208) (holding courts need not draw unreasonable inferences from

14   circumstantial evidence at summary judgment).

15           Plaintiffs point to the following circumstantial evidence: (i) the City did not set up a payroll

16   system to require, review, or keep records to explain unpaid absences, (ii) the payroll process not based

17   on the nurses' FTE, (iii) the absence of a safeguard, and (iv) the City not informing the Nurses that they

18   were guaranteed a schedule or a predetermined amount of pay. Dkt 159 at 24.  Plainly, none of these

19   issues on their face speak to whether the City ever sent a nurse home or otherwise denied a nurse the

20   opportunity to work a shift.  Moreover, just like the Andrea Don report, none of these points are direct

21   evidence regarding the City's behavior.  And, also like the Andrea Don report, drawing an adverse

22   inference from this circumstantial evidence would be unreasonable in the face of the extensive and

23   unrefuted evidence that the City never sent a nurse home or deprived a nurse of the opportunity to work a

24

25   _____

     [6] Plaintiffs' efforts to undermine their own deposition testimony is neither persuasive nor admissible.
     Plaintiffs have added five nearly identical declarations from deposed Plaintiffs that seek to contradict
26   their own deposition testimony. Dkt. Nos. 147-38, -39, -40, -43, and -44. These rote declarations are
     unpersuasive because the deposition testimony speaks for itself and because none the declarants actually
27   say affirmatively that the City deprived them the opportunity to work. Moreover, this Court should
     discount these declarations as "sham affidavits." *Slojewski v. Polam Fed. Credit Union*, 473 F. App'x
28   534, 535 (9th Cir. 2012) (finding the district court did not abuse its discretion in discounting a declaration
     that made no attempt to explain the prior deposition testimony or claim confusion during the deposition).

1    shift.

###### 7.    Even If the Silloway Plaintiffs Could Show Instances Of Improper Deductions From Pay, Liability Does Not Exist Because Silloway Plaintiffs Cannot Make The Showings Required Under Section 603 For Liability As To Any Individual Plaintiff

Liability also does not exist because the Silloway Plaintiffs cannot make the showings required under Section 603 to establish liability.  Before there is FLSA liability, there must be additional showings made under Sections 603(a) and (b).  *Silloway*, 117 F.4th at 1076, 1082-1084.  It is plaintiffs burden to make these showings to establish liability.  *See Coates v. Dassault Falcon Jet Corp.*, 961 F.3d 1039, 1047 (8th Cir. 2020) (noting that it is plaintiff's burden to make the required showings under Section 603(a)).  First, there must be a multi-factor showing that the City engages in an "actual practice" of impermissible deductions.  29 C.F.R. § 541.603(a).  And even if the City has an "actual practice," the exemption from overtime is lost only for an individual employee (1) during the time- period when the improper deduction is made, and (2) for other employees under the same manager during that time period.  29 C.F.R. § 541.603(b).  The exemption from overtime is not lost for all employees for the entire claim period.  See e.g., *Baden-Winterwood v. LifeTime Fitness, Inc.*, 566 F.3d 618, 633-34 (6th Cir. 2009) (rejecting plaintiffs' argument that "the district court erred in limiting recovery to the three pay periods in 2005, rather than granting overtime to all Plaintiffs for the entire post-August 23, 2004, claim period").

However, as the City noted in its opposition to the Plaintiffs motion for summary judgment, despite it being the Plaintiffs burden, the Plaintiffs have offered no evidence on this Section 603(b) issue.  Dkt. 161, at 25.  They have not specified any particular time periods, under particular managers, during which plaintiffs allegedly experienced an improper deduction.  The Don report, upon which they so greatly rely, does not include that information.  Without any evidence on this issue, there can be no liability and the City is entitled to judgment as a matter of law.

##### D.    The City Is Also Entitled To Summary Judgment on the Issue of Its Good Faith

The City met its burden on summary judgment by providing evidence that establishes the City's good faith.  *Silloway* Dkt. 153 at 34-35.

RENNE PUBLIC LAW GROUP®

Several years before this lawsuit was filed,  Classification and Compensation Director Steve Ponder concluded that registered nurses who are registered with the state licensing board meet the duties test of learned professionals. *Silloway* Dkt. 154-7, at 281 (Ponder Decl. Ex. G (citing 29 C.F.R. § 541.301(e)(2).)  He also determined that, as a public agency that provides vacation and sick leave to its employees, deduction may be made to an employee's salary for absences due to personal reasons, illness, or injury if (1) permission to take leave has not been sought or has been sought and denied; (2) accrued leave has been exhausted, or; (3) the employee chooses to take leave without pay. Dkt. 153-7, Ex. H (citing 29 C.F.R. § 541.710).) And he concluded that the City may provide overtime or other additional compensation to Staff Nurses without losing the overtime exemption. Dkt. 153-7, Ex. H (citing 29 C.F.R. § 541.604).)  These actions show that the City acted in good faith.

Because the City met its burden, the burden shifts to the Plaintiffs, the nonmoving party, "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Plaintiffs contend that it is procedurally inappropriate to decide the issue of good faith at the summary judgment phase, arguing that the City did not cite any case in which a court granted summary judgment to the defendant on the issue of good faith. *Silloway* Dkt. 159 at 28.  To avoid leaving a question begging, as Plaintiffs do, there are cases in which Courts grant summary judgment to defendants on the good faith defense. *See, e.g.*, *Ray v. Los Angeles Cnty. Dep't of Pub. Soc. Servs.*, 52 F.4th 843, 852 (9th Cir. 2022) (affirming the grant of summary judgment to the County on the issue of willfulness and denying summary judgment to the plaintiff on the issue of liquidated damages because "the County acted in good faith.").

None of the facts discussed by the Plaintiffs here create a genuine dispute over whether the City acted in good faith.  First, Plaintiffs argue that the City did not act in a reasonable manner because Mr. Ponder is not an attorney and his deposition testimony may suggest he has a mistaken view of some aspects of the law. Dkt. 159 at 28-29.  Plaintiffs' argument is unpersuasive.  Plaintiffs effectively argue that because the City did not hire a labor attorney to review its practices, it did not act in good faith.  The caselaw is not so demanding.  For example, the Ninth Circuit upheld a District Court's determination that

RENNE PUBLIC LAW GROUP®

1  the County of Los Angeles had reasonable grounds for believing its employees were exempt under the

2  FLSA because the duties performed could be construed as analogous to those of stockbrokers and

3  insurances agents whom the regulations cite as exempt employees.  *Bratt v. Cnty. of Los Angeles*, 912

4  F.2d 1066, 1072 (9th Cir. 1990).  The Ninth Circuit did not suggest that an attorney was necessary for the

5  County to act in good faith and it found that the County was incorrect in its interpretation of the

6  governing regulations.  *Id.*

7     Next, the Plaintiffs offer a discussion about the capacity of the City's payroll to run reports

8  showing whether a nurse worked less than their FTE, the City's efforts to compare dual-status nurses

9  earnings to their salary, and whether the City's MOU guarantees a minimum number of hours each pay

10  period to meet its burden of showing a genuine issue of fact.  Dkt. 159 at 29.[7]  But Plaintiffs fail to

11  connect this discussion to Mr. Ponder's efforts to ensure the City complied with FLSA.  While these

12  ideas could also be useful in complying with the FLSA, there mere existence does not in speak to

13  whether the City acted in good faith.  The failure to present any evidence of genuine dispute is fatal to the

14  Plaintiffs opposition.

15     The cases Plaintiffs cite in discussing good faith are distinguishable.  The information provided

16  by Steven Ponder is precisely the type of information that the Court found to be missing in *Flores*.

17  *Flores v. City of San Gabriel*, 824 F.3d 890, 905-906 (9th Cir. 2016).  Namely, as the City described in

18  its opening brief, an explanation of how the department determined that it complied with the FLSA.  *Id.*[8]

19  Mr. Ponder's research into Department of Labor Regulations, creation of a memorandum to his

20  supervisor regarding this research into these rules, and his efforts to revisit his conclusions show that

21  unlike *Flores*, the City has provided evidence of it actively endeavoring to comply with the FLSA.

---

[7] The Plaintiffs also point out that Mr. Ponder agreed at deposition that supervisor have the authority
cancel nurses shifts.  Dkt. 159 at 29-30.  This appears to be an effort to reintroduce the idea that
provisions of the MOU authorized the City to cancel shifts, an issue that the Ninth Circuit found factor
does not weigh in favor of either side.  *Silloway*, 117 F.4th at 1087.  It is not clear how such authority
bears on whether the City acted in good faith as a reasonably prudent person would.  But, to the extent
that issue has any bearing, the context of its existence supports that the City acted in good faith.  The City
never used this authority, it instructed supervisors not to do so, and its existence is because it was lifted
from other contracts.

[8] The City's description of how it determined it was complying with the FLSA also makes this case
distinguishable from *Block v. City of Los Angeles*. 253 F.3d 410, 420 (9th Cir. 2001) ("The City,
however, did not explain how or why it believed it was complying with the FLSA").

Renne Public Law Group®

1    Additionally, Mr. Ponder periodically revisited his analysis to ensure no changes occurred that would

2    alter his analysis, Silloway Dkt. 154-7 at 11-12 (Ponder Decl ¶ 29), whereas in *Flores* the Court

3    criticized the defendant for failing to conduct a review of its system.  824 F.3d at 906.

4         Mr. Ponder's reliance on the Department of Labor, Dkt. 153-2 ¶ 29, Ex. G, distinguishes this case

5    from several cited by the Plaintiffs.  *See  Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir.

6    2003) (defendant failed to consult any objective authority); *Sec'y of Lab. v. Timberline S., LLC*, 925 F.3d

7    838, 856 (6th Cir. 2019) (director of defendant "never sought advice for this decision or took any other

8    active steps to inform himself regarding this determination").[9]

### E.    Plaintiffs' Discussion of Willfulness Does Nothing to Meet its Burden to Show the City was Willful, its Only Statement on the Issue is Conclusory.

11        Plaintiffs' one-sentence argument on willfulness contends that the City acted similarly to the

12    defendant in *Flores* and took no objectively reasonable "affirmative actions" to ascertain what the FLSA

13    required and ensure compliance.  Dkt. 159 at 30.  Because the City presented evidence showing its good

14    faith, the burden shifts to the Plaintiffs, the nonmoving party, "to go beyond the pleadings and by her

15    own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

16    'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317,

17    324 (1986).  Their brief does not even attempt to offer evidence establishing a genuine issue of factual

18    dispute regarding willfulness.

### F.    The City is Entitled To Summary Judgment on Liability Regarding the Litvinova Plaintiffs

21        The City is entitled to summary judgment because it provided evidence that there is no genuine

22    dispute that, at all relevant times, it provided the plaintiffs with the opportunity to work their full standard

23    hours or FTE.  In doing so, the City established, as a matter of law, that it complied with the salary basis

24    test for public employers articulated by the Ninth Circuit.  *Silloway*, 117 F.4th at 1079.

---

[9] *Diaz v. City of Plantation* is distinguishable because in that case the person who reviewed the situation had a limited knowledge of the facts, based his understanding of the law on his prior experience and did not review additional facts or law to come to his conclusion.  *Diaz v. City of Plantation, Fla.,* 524 F. Supp. 2d 1352, 1369 (S.D. Fla. 2006).

RENNE PUBLIC LAW GROUP®

1.     **The Litvinova Admissions Require Summary Judgment.**

In particular, the City produced evidence sufficient to establish the following.  All Staff Nurses are assigned to a consistent normal schedule according to their FTE, or standard hours.  Dkt. 153 at 17. The City's payroll practices are consistent with Section 710.  Dkt. 153 at 17-18.  All staff nurses who were deposed admitted that they were not, or could not recall, being sent home or denied the opportunity to work a regular shift.  Dkt. 153 at 18-19.  The City also updated its expert report, addressing the questions posed by the Ninth Circuit on remand.  Dkt. 153 at 19-22.

Litvinova Plaintiffs agree with this description of the facts.  They admit:

> Critically, depositions and documentary evidence from a wide cross-section of nurse plaintiffs show uniform experiences: all were consistently scheduled for at least their designated FTE; none was involuntarily denied scheduled work or forced into unpaid status except in cases of voluntary leave, leave bank exhaustion, or infrequent and well-documented exceptions (such as rare disciplinary suspensions, protected accommodations, or voluntary standby in low-census units).  Numerous nurses recounted never being involuntarily sent home, and no evidence suggests a widespread, managerial practice of denying nurses the opportunity to fulfill their scheduled hours.

*Litvinova* Dkt. 207 at 7.  Based on this quotation, the City is entitled to summary judgment with respect to all Litvinova Plaintiffs because this quotation is an admission that the facts show the City paid the Plaintiffs on a salary basis.  *Silloway*, 117 F.4th at 1079 (explaining that a public employer meets the salary basis test if it gives "its employees the *opportunity* to earn predetermined amounts on a weekly or less frequent basis, a prospect that will be fulfilled so long as employees do not miss work for unexcused reasons").  Thus, there is no genuine issue of material fact and the City is entitled to judgment as a matter of law.

None of these arguments undermine the City's entitlement to summary judgment.

2.     **Litvinova Plaintiffs Independent Salary Guarantee Argument Is Based On The Wrong Section Of The FLSA's Implementing Regulations.**

Litvinova argues that the City is not entitled to summary judgment because the City "must pay a single, fixed guaranteed amount, independent of time worked" in order to fulfill the requirements of Section 604(b).  *Litvinova* Dkt. 207 at 3. However, the Court of Appeals already declined Plaintiffs' invitation to apply Section 604(b) to this case, explaining that "Section 604(b) provides an alternative path [to Section 602(a)] for an employer to show that an employee is paid on a salary basis." *Silloway*,

RENNE PUBLIC LAW GROUP®

1    117 F.4th at 1075.[10]

2        **3.    Litvinova Plaintiffs' Arguments regarding Controlling Legal Developments
         are Either Supportive to the City's Motion or Irrelevant to its Disposition**

3

4        Litvinova states that newly enacted California Labor Code Section 1182.14 raises threshold issues

5    of Article III standing.  *Litvinova* Dkt. 207 at 3-4.  If the Plaintiffs believe there is a lack of standing, they

6    should dismiss their lawsuit as to claims where standing no longer exists.

7        Litvinova next argues that the meaning of salary as defined by the FLSA preempts any conflicting

8    interpretation of that term.  *Litvinova* Dkt. 207 at 4.  the City makes no such assertion; this argument is

9    irrelevant to the disposition of the City's motion.

10       Finally, Litviniova notes that the preponderance of the evidence standard applies.  *Litvinova* Dkt.

11   207 at 4.  The City agrees that the holding of *E.M.D. Sales, Inc. et. al. v. Carrera*, 604 U.S. 45, 47 (2025)

12   establishes a preponderance of the evidence standard for demonstrating FLSA exemption.[11]

13       **4.    Litvinova's Discussion of the Remaining Factual Disputes While Apparently A
         Response to Decertification, Supports the City's Motion for Summary
         Judgment**

14

15       Litvinova argues that disputes over whether the City properly explained discrepancies identified

16   by the Ninth Circuit or whether they constitute an actual practice of impermissible deductions is a factual

17   issue that precludes summary judgment.  *Litvinova* Dkt. 207 at 5.  This argument is actually an extended

18   discussion of why all plaintiffs are similarly situated.  *Litvinova* Dkt. 207 at 6-8.   The point appears to be

19   a challenge to the City's motion for decertification, not summary judgment, because the Litvinova

20   Plaintiffs state that the core issues "are squarely collective in nature."  *Litvinova* Dkt. 207 at 8.

21       But Litvinova's own description constitutes an admission that the City is entitled to summary

22

23   ―――――――――――――
     [10] Litvinova Plaintiffs mention Judge Bea's dissent is perplexing because Judge Bea also noted that

24   Section 602 and 604 "offer non-overlapping paths to satisfy the salary-basis requirement."  *Silloway*, 117
     F.4th at 1093.  Thus, neither the majority nor the Judge Bea would require proving both as suggested by

25   the Litvinova Plaintiffs.

26   [11] Litvinova Plaintiffs' footnote about *Sniadach* does not make any argument and for that reason should
     be ignored.  *Litvinova* Dkt. 207 at 3 n.1.  Any argument that could be made about Sniadach were it

27   properly developed would be irrelevant because that case is distinguishable.  *Sniadach* involved a
     "prejudgment garnishment" of wages.  *Sniadach v. Fam. Fin. Corp. of Bay View*, 395 U.S. 337, 340
     (1969).  Neither wage garnishment nor the possibility doing so before judgment is at issue here.

28   Accordingly, there is no reason to think that the principles in *Sniadach* is in anyway relevant.

RENNE PUBLIC LAW GROUP®

1    judgment.  Litvinova Plaintiffs admit that "the City's own expert analysis, as well as Plaintiffs' expert

2    rebuttal, demonstrates that the vast majority of alleged pay 'shortfalls' are readily accounted for and

3    resolved using central payroll records, supervisor explanations, and standard payroll codes."  *Litvinova*

4    Dkt. 207 at 6.  The Litvinova Plaintiffs, in the block quote above, concede that evidence from a wide

5    cross-section of nurses shows that plaintiffs had uniform experiences.  *Litvinova* Dkt. 207 at 7.  They

6    were all scheduled for at least their FTE.  *Id.*  They were not denied scheduled work or forced into an

7    unpaid status.  *Id.*  They were never involuntarily sent home.  *Id.*  There is no evidence of a practice of

8    denying nurses the opportunity to work their scheduled hours.  *Id.*  The Litvinova Plaintiffs also concede

9    that "no nurse deposition revealed any material difference in how policy is applied based on unit,

10   worksite, or managerial staff—scheduling, pay adjustments, leave use, and corrections are processed

11   using the same citywide forms and payroll mechanisms."  *Id.*  When all of these admissions are

12   considered with the deposition testimony of the Litvinova Plaintiffs, *see* Dkt. 153, Section V.B.1., it is

13   clear that there are no factual disputes on the remaining material issue, the City never sent any nurses

14   home or otherwise denied any nurse the opportunity to work her or his full FTE.  For this reason,

15   summary judgment is proper.

16              **5.    Litvinova Plaintiffs Evidentiary Arguments Regarding Steven Ponder Should
                       Be Rejected**

17

18           Litvinova Plaintiffs object to 15 different paragraphs and two exhibits from the Ponder

19   Declaration on five different evidentiary grounds.  *Litvinova* Dkt 207 at 9-11.  Facially, these statements

20   are inadequate and should be disregarded by the Court because they are "boilerplate objections devoid of

21   any specific analysis."  *Sernoffsky v. Novak*, 773 F. Supp.3d 988, 999 (S.D. Cal. 2025); *Amaretto Ranch

22   Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012) ("This Court need not address

23   boilerplate evidentiary objections that the parties themselves deem unworthy of development.").

24           Specifically, Litvinova object on the grounds of foundation, speculation, hearsay, relevance, or

25   that evidence constitutes an improper legal conclusion.  However, "objections such as lack of foundation,

26   speculation, hearsay, relevance, or that evidence is argumentative or constitutes an improper legal

27   conclusion 'are all duplicative of the summary judgment standard itself' and unnecessary to consider"

28   when deciding a motion for summary judgment.  *Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 999 (S.D.

RENNE PUBLIC LAW GROUP®

Cal. 2025) (collecting cases).

To the extent Litvinova plaintiffs provide any explanation of their objections, those exceedingly limited justifications lack merit. Litvinova Plaintiffs argue that Mr. Ponder makes a legal conclusion when using the term 'salary' in paragraphs 8 through 15. *Litvinova* Dkt 207 at 9. But, in those paragraphs, Mr. Ponder never offers any opinion about the FLSA or its implementing regulations. In those paragraphs, he discusses the MOU. Nothing about that discussion constitutes a legal conclusion.

Litvinova Plaintiffs argue that Mr. Ponder's statements in paragraph 11 lack foundation, are based on speculation and hearsay. *Litvinova* Dkt. 207 at 10. In stating that he reviewed the salary ordinances Mr. Ponder is providing foundation. In the previous paragraph he explains that he got this information from Classification & Compensation Database that is maintained by the San Francisco Department of Human Resources. To be sure, Mr. Ponder's declaration provides information from the City's records. In this way though, he acts as records custodian and the evidence is admissible under the public records exception to the hearsay rule. *See* Fed. R. Evid. 803(8).[12]

Litvinova Plaintiffs argue that Mr. Ponder characterizations of the MOU in Paragraphs 13, 15, 17, 21, and 23 of his declaration, lack foundation and personal knowledge, are based on speculation and hearsay, and are legal conclusions because there is no evidence that the declarant was personally involved in the negotiations of the MOU. *Litvinova* Dkt 207 at 10. This argument lacks merit because it ignores relevant portions of Mr. Ponder's declaration. Paragraph 1 of Mr. Ponder's declaration states "I have personal knowledge of the following facts and if called as a witness could and would testify competently thereto." Mr. Ponder is the Classification and Compensation Director for the Department of Human Resources at the City and County of San Francisco. *See* (Ponder Decl. ¶ 2.) The division Mr. Ponder directs is responsible for classifying the City's positions and management of MOU and Municipal Code provided compensation. *Id.* Mr. Ponder stating that he makes his declaration from personal knowledge and that he is the director of the division responsible for management of the MOU is evidence that he was personally involved in the negotiations of the MOU to the extent he discusses them in the

---

[12] The Classification & Compensation Database maintained by the San Francisco Department of Human Resources fits the definition of a public record under Rule 803(8) because it sets out the office's activities and there is no basis to show that the information lacks trustworthiness.

RENNE PUBLIC LAW GROUP®

RENNE PUBLIC LAW GROUP®

remainder of his declaration.

Litvinova Plaintiffs argue that in Paragraph 22, Mr. Ponder's references to "exempt" and "non-exempt" are legal conclusions. *Litvinova* Dkt 207 at 10. This argument lacks merit because it suggests that Mr. Ponder's statements are being used to establish legal conclusions. But, Mr. Ponder merely provides his understanding in that paragraph. He does not assert that, as a matter of law, he is correct. Moreover, paragraph 22 has no bearing on the substance of the City's motion. It is only referenced in a footnote the City believes may be helpful for the Court's understanding of the facts.

Litvinova Plaintiffs argue that Mr. Ponder's description in paragraph 29 is vague and contains legal conclusions, is based on speculation and hearsay because Mr. Ponder is not an expert nor are their any details in his declaration about his experience. *Litvinova* Dkt. 207 at 10. This argument lacks merit because it misunderstands the purpose of the paragraph. Mr. Ponder is providing an explanation of his involvement in creating the payroll practices at issue. This explanation shows that the City acted in good faith even assuming for the sake of argument that it somehow failed to comply with FLSA. Under the basic premise of that argument, Mr. Ponder would be incorrect. But should the court reach this argument, Mr. Ponder's mistaken but well-intentioned understanding is not being offered to prove its correctness, it is being offered to show that the City always operated in good faith.

Litvinova Plaintiffs argue that Mr. Ponder's Exhibit E is irrelevant to the issue of whether there is a minimum guarantee contained in the MOU. *Litvinova* Dkt. 207 at 10. But this argument lacks merit because it is premised on a portion of the statute not at issue. The "minimum guarantee" language referenced in the Litvinova Plaintiffs argument comes from Section 604(b). *Litvinova* Dkt. 207 at 3. However, the Court of Appeals already declined the *Silloway* Plaintiffs' invitation to apply Section 604(b) to this case, explaining that "Section 604(b) provides an alternative path [to Section 602(a)] for an employer to show that an employee is paid on a salary basis." Silloway, 117 F.4th at 1075. Indeed, at this point in the ligation, the relevance of Exhibit E is that it lends credence to a point that the Litvinova Plaintiffs concede, the City never sent any of the nurses home involuntarily.

Finally, Litvinova Plaintiffs argue that Mr. Ponder's Exhibit G is hearsay. *Litvinova* Dkt 207 at 11. This argument lacks merit because Exhibit G is not offered to prove the truth of the matters it asserts. Exhibit G is a memo that Mr. Ponder generated in the course of his duties establishing payroll policies.

As is the case with paragraph 29, it is relevant to the extent the Court reaches the issue of good faith. If it does reach that issue, it is not important whether the contents of this memo are true, what matters is that Mr. Ponder, acting on behalf of the City, created the memo in a good faith effort to comply with the FLSA. The existence of the memo and the analysis it performs show that the City acted in good faith in an effort to comply with the FLSA.

**III.    CONCLUSION**

For the reasons articulated above, this Court should grant the City's Motion for Summary Judgment.

Dated: November 13, 2025                           RENNE PUBLIC LAW GROUP®


By: */s/ Linda M. Ross*_____
     Linda M. Ross

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO