UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATYANA LITVINOVA,<br><br>            Plaintiff,<br><br>     v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>            Defendant. | Case No. 18-cv-01494-RS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs in this collective action are dual-status nurses employed by the City and County of San Francisco ("the City"). Plaintiffs sued the City for failure to pay overtime wages under the Fair Labor Standards Act ("FLSA"). In a prior order, Plaintiffs' counsel was sanctioned for willful failure to comply with discovery obligations and court-imposed deadlines. *See* Dkt. 180. The sanctions order significantly limited the universe of evidence available to Plaintiffs and ordered certain key facts established for the City. *See id.* Plaintiffs' motion for reconsideration was denied. *See* Dkt. 205.

The evidentiary consequences of the sanctions order makes summary judgment for the City appropriate. Plaintiffs are unable to offer any evidence establishing that the City denied them the opportunity to work their scheduled hours, making Plaintiffs bona fide professionals under the FLSA's implementing regulations and disqualifying them from the FLSA's overtime protections. The grant of summary judgment to the City moots the City's motions for exclusion of Plaintiffs' expert and for decertification of the collective action. *See* Dkt. 196, 198.

# I. BACKGROUND

The factual and procedural history of this case has been recounted at length in other orders, and in a published decision of the Ninth Circuit, *see Silloway v. City and County of San Francisco*, 117 F.4th 1070, 1072–78, so only the crucial details are recited here. Plaintiffs are staff nurses employed by the City. Staff nurses work in shifts scheduled by the City, and their compensation for that work is determined through negotiations between the City and the nurses' union. These nurses also work so-called "per-diem" shifts, which are voluntary shifts the City fills on an as-needed basis to cover staffing shortfalls in its health facilities. Per-diem shifts command an hourly wage equal to 125% of the hourly rate implied by the salary negotiated between the City and the nurses' union. The crux of Plaintiffs' compliant is that the FLSA obligates the City to pay its nurses 150%, not 125%, of that implied hourly rate whenever a nurse's decision to pick up per-diem shifts causes her to work more than 40 hours in a week.

The City has asserted an affirmative defense. Under the FLSA, an employer is exempt from overtime requirements if the employee is a bona fide professional. *See* 29 U.S.C. § 213(a). The regulations set out two requirements for an employee to be considered a bona fide professional, *see id.* § 541.300, but only one is at issue here: whether the Plaintiffs were actually compensated on a salary basis, *see id.* That question turns on whether the City guaranteed the Plaintiffs the opportunity to work all of the hours that correspond to their employment status. For instance, for the City to win, it must show that it guaranteed all full-time nurses the opportunity to work 40 hours in a week. Nurses that agreed to work a particular fraction of full-time status must have been guaranteed the ability to work that fraction of 40 hours per week.

That does not mean that the Plaintiffs must have actually worked the hours they were entitled to work. The regulations permit the City to reduce a nurse's compensation where she (1) "is absent from work for one or more full days for personal reasons, other than sickness or disability," or (2) where she is absent "for personal reasons or because of injury or illness" for less than one full day. *See* 29 C.F.R. §§ 541.602(b), 541.710. Put simply, the City must give Plaintiffs the chance to work all their hours, and any deductions for time not worked must be solely caused

by the Plaintiffs.

Summary judgment was previously granted to the City on this affirmative defense. *See* Dkt. 103. That decision was reversed by the Ninth Circuit. *See Silloway*, 117 F.4th at 1088. The panel homed in on the City's expert report, which was prepared by Dr. Hossein Borhani. *See id.* at 1082. That report reviewed the payroll records of 26 opt-in nurses across this case and the related *Silloway* case. *See id.* Though it found the City permitted the nurses to work their full-time equivalent hours in nearly 97% of pay periods, the panel identified 72 pay periods (3.2% of the total analyzed) in which there was an unexplained shortfall between the nurse's full-time equivalent hours and the hours accounted for on her pay check.

On remand, the City attempted to account for those discrepancies. It engaged in discovery, serving interrogatories and requests for production on the Plaintiffs in an attempt to discern which nurses were denied the opportunity to work their full hours. Counsel for Plaintiffs was less interested. He made meritless objections to the City's interrogatories, fully failed to respond to other requests, and violated Court-imposed deadlines. *See* Dkt. 180, at 2–3; Dkt. 205, at 2. Sanctions were imposed. The sanctions decision ordered certain facts sought by the City established in a manner adverse to Plaintiffs. *See* Dkt. 180 at 8–11. It also limited the evidence Plaintiffs could use to establish entitlement to relief to the deposition testimony of the seven nurses that were deposed. *See id.* at 11.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The non-moving party must then offer evidence of such a caliber that 'a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be

ORDER GRANTING SUMMARY JUDGMENT
CASE NO. 18-cv-01494-RS

3

1  insufficient.'" *United States v. Wilson*, 881 F.2d 596, 601 (9th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017).

## III. DISCUSSION

The sanctions order requires summary judgment for the City. That order limited the evidence available to Plaintiffs to the deposition testimony of the seven opt-in nurses that appeared for deposition: Tatyana Litvinova, Grace Bondoc, Santiago Hayo, Ryan Hood, Romula Adiao, Jacqueline Savage, and Virginia Bryant.

Each of those seven nurses testified that they were never denied the opportunity to work their full-time equivalent hours. *See* Dkt. 197, Spellberg Decl., Ex. J (Litvinova Depo. Tr.), at 27:25–28:6 ("Q: It's true, is it not, that every time you're scheduled for the 48 hours in two weeks, you always have that opportunity to work the 48 hours, right? . . . A: yes."); *id.*, Ex. B (Bondoc Depo. Tr.), at 22:16–23:16; *id.*, Ex. M (Hayo Depo. Tr.), at 21:23–22:2 ("Q: Isn't it true, Mr. Hayo, that when you were working at the jail, you were always paid -- or you also accounted for 80 hours in a two-week time period? A. Correct."); *id.*, Ex. H (Hood Depo. Tr.), at 26:23–28:22; *id.*, Ex. A (Adiao Depo. Tr.), at 15:8–16:21; *id.*, Ex. N (Savage Depo. Tr.), at 21:23–24:14; *id.*, Ex. R (Bryant Depo. Tr.), at 31:3–32:16. The deposition testimony thus establishes that Plaintiffs were salaried employees not subject to the FLSA's overtime provisions.

Even if a jury were inclined to think the deposition testimony was caused by a nurse's faulty or incomplete recollection, the sanctions order precludes Plaintiffs from filing in the gaps in a manner that shows the City's liability. It established, for instance, that Plaintiffs are "unaware of any facts, documents or persons with information to support" the claim that "the City denied a nurse the opportunity to work a regularly scheduled shift." Dkt. 180, at 10. There is simply no available evidence from which Plaintiffs can establish a dispute of fact.

Seeking to avoid that result, Plaintiffs rely heavily on the Ninth Circuit's decision reversing the prior grant of summary judgment and remanding the case for resolution of the

ORDER GRANTING SUMMARY JUDGMENT
CASE NO. 18-cv-01494-RS
4

1  outstanding factual disputes. As explained, the Ninth Circuit identified 72 pay periods in which a
2  nurse was paid less than her regular hours would have commanded. However, under the sanctions
3  order, Plaintiffs have constructively admitted that they are not aware of any evidence
4  demonstrating that these shortfall periods were the result of the City denying the nurse the ability
5  to work her regular hours. *See* Dkt. 180, at 9–10 ("The Court orders under Rule 37(b)(2)(A)(ii)
6  that plaintiffs are prohibited from making any claim that the 72 pieces of missing data show a
7  violation of Section 710."). In effect, Plaintiffs have admitted that there is no dispute of fact,
8  notwithstanding the shortfall periods present in the City's expert report.[1]

9  Perhaps recognizing their inability to show a factual dispute, Plaintiffs turn to a legal
10 argument. They contend that a bottom-up compensation scheme in which nurses are compensated
11 for hours worked (or for hours spent out of a leave bank) is inherently hour based, not salary
12 based. That argument is foreclosed by the Ninth Circuit's decision reversing the prior grant of
13 summary judgment. The panel explained the public accountability principle, codified in 29 C.F.R.
14 § 541.710, permits a public employer to "use a bottom-up approach that counts the number of
15 hours actually worked, multiplies them by [the applicable] hourly rate, and makes any necessary
16 adjustments" for hours the employee did not work for personal reasons. *Silloway*, 117 F.4th at
17 1080.

18 Plaintiffs certainly gesture at something intuitively uncomfortable about considering an
19 employee paid only for hours she works to be salaried. However, the panel in *Silloway* explained
20 that this seemingly strange result is "the product of a long history of political and constitutional
21 controversy and policy disagreement in applying the FLSA to state and local employers." 117
22 F.4th at 1080. During the period in which the FLSA did not apply to state and local governments,
23 many public employers compensated their employees in accordance with public accountability
24 laws. *See id.* Under the then-prevailing regulations, those public accountability laws would have

---

[1] For this reason, whether the City's expert report successfully reconciles all the shortfall pay periods is irrelevant in this case.

taken state and local employees out of the professional-capacity exemption. *See id.* Thus, when the Supreme Court reversed course and permitted the FLSA's wage-and-hour provisions to apply to state and local governments in *Garcia v. San Antonio Transit*, 469 U.S. 528 (1985), those state and local governments became concerned that they would either have to defy their public accountability laws or forgo the benefits of the professional-capacity exemption. *See id.* at 1081.

To alleviate that concern, the Secretary incorporated the public accountability principle into the FLSA's implementing regulations. *See Silloway*, 117 F.4th at 1080. Therefore—strange as it may seem—the City can deduct a nurses pay down to the minute so long as the time not worked was caused by the nurse, all without losing the benefit of the professional-capacity exemption. In other words, the City must merely "guarantee[ the nurses] the opportunity to work the hours corresponding to their full-time equivalency every week." *Id.* at 1077.

The remainder of Plaintiffs' arguments are difficult to understand. They contend that a newly enacted provision of California law "appears to divest consolidated charter cities and counties, including [the City], of all authority to enact or enforce ordinances related to wages or compensation for covered health care facility employees," which in Plaintiffs' view, raises an Article III standing problem. Dkt. 207 at 3–4. Standing, however, is a barrier to a plaintiff bringing a suit in federal court, not to a defendant defending that suit.

Plaintiffs further argue that the federal definition of "salary" under the FLSA preempts any less employee-friendly definition used by local employers. *See* Dkt. 207, at 4. That is both true and irrelevant. Throughout this litigation, the City has attempted to demonstrate compliance with the salary basis test as defined in federal law; it has not offered a different definition of "salary" that it claims trumps federal law.

The remainder of Plaintiffs' submission is responsive to the City's separate motion to decertify the collective action. There is no need to address those arguments because the City's decertification motion is mooted by the favorable grant of summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the City's motion for summary judgment (Dkt. 197) is granted.

ORDER GRANTING SUMMARY JUDGMENT
CASE NO. 18-cv-01494-RS

The City's motion to decertify the collective action (Dkt. 198) and to exclude the Plaintiffs' expert (Dkt. 196) are moot. As previously noted, nothing in this order shall have any effect in the related *Silloway* case.

**IT IS SO ORDERED**

Dated: November 17, 2025

RICHARD SEEBORG
Chief United States District Judge